BERTRAM RUDOLPH, Plaintiff, *v.* RIVERDALE MANAGEMENT, INC., Defendant.

Municipal Court of the City of New York, Borough of The Bronx, June 13, 1952.

*John J. Connolly* for defendant.

*Jeanette R. Haarman* for plaintiff.

LASHIN, J. Plaintiff seeks to recover the sum of $260 for property damage to his automobile while parked in a garage maintained by the defendant and allegedly caused by the negligence of the defendant. It appears that plaintiff was a tenant of the defendant in premises 5635 Netherland Avenue, Bronx, New York, under a written lease. In addition he had executed a lease agreement whereby he became entitled to a specific stall or space in the garage under the premises owned by the defendant. Said agreement contained the following provision: " The tenant understands and agrees that the owner-operator will not participate in the moving and/or placing of cars in the said garage and that no watchman or other representative of the owner-operator will be furnished for any such purpose and the owner-operator is hereby released and discharged from any and all responsibility or liability by reason of any loss occurring either through larceny in or about the garage or by reason of any personal injuries or property damage loss resulting in the garage through the movement and/or maintaining or storing of cars in the said garage by the undersigned tenant or by any other persons. For the purpose herein expressed, it is distinctly understood and agreed that the owner-operator does not reserve unto himself the control or supervision of the moving or placing of cars in said garage, except for repairs to the building therein and the cleaning thereof."

The testimony showed that plaintiff parked his car in the garage on the evening of February 26, 1951, and found it in a damaged condition the following morning. He reported the damage to defendant's agent immediately. Plaintiff testified that he never saw anyone supervise or control the parking of cars on the part of the landlord, nor drive or move any cars of the garage; that he did not give the keys to his car to the management; that there was no other or further arrangement than that embodied in the lease agreement.

Defendant's supervisor testified that each tenant had a stall of his own for his car; that the doors to the garage were generally unlocked but each tenant had his own key; that at no time did the landlord supervise, direct or control the placing of cars,

and that the parties were governed by the arrangements in the lease agreement. There was also testimony by the defendant that plaintiff admitted that he did not know where the accident occurred.

It is the contention of the plaintiff that the exemption clause in the lease agreement is void under section 89-b of the General Business Law and that defendant is liable to him for disregarding its duty to safely keep his automobile. Defendant contends, in turn, that said section does not apply in the case at bar; that defendant was a lessor and not a bailee for hire and hence could exempt itself from liability for negligence and that in any event defendant must succeed herein because plaintiff failed to show any negligence on the part of the defendant.

Section 89-b of the General Business Law was enacted in 1949 upon recommendation of the Law Revision Commission. It reads as follows: " No person who conducts or maintains for hire or other consideration a garage, parking lot or other similar place which has the capacity for the housing, storage, parking, repair or servicing of four or more motor vehicles, as defined by the vehicle and traffic law, may exempt himself from liability for damages for injury to person or property resulting from the negligence of such person, his agents or employees, in the operation of any such vehicle, or in its housing, storage, parking, repair or servicing, or in the conduct or maintenance of such garage, parking lot or other similar place, and any agreement so exempting such person shall be void."

The opening paragraph of the Law Revision Commission Report for the year 1949, says at page 809: " This study deals with the legal aspects of the practice adopted by a number of garagekeepers of inserting a clause in a card given as a receipt to those storing their cars in the garage, relieving the garage and its employees, from any and all liability whatsoever while the vehicle of the patron is in its care, custody, operation or control in process of pick-up or delivery."

While section 89-b goes further and prohibits an exemption from one's own negligence, not only in the operation of a vehicle but in its housing, storaging, parking, repair or servicing or in the conduct or maintenance of a garage, the intent of the Legislature obviously, was to have the section apply to garagekeepers who actually took possession and control of a car and to place garagekeepers in the same position as warehousemen who are prohibited from exempting themselves from liability for their own negligence by sections 91 et seq. of the General Business Law. The very fact that the new section was put into

the General Business Law in a place immediately preceding the provision governing warehousemen, substantiates this conclusion. A warehouseman is, of course, a bailee for hire. Section 89-b is directed against garagemen who are in a position of bailees for hire. The section prohibits an exemption from the duties and liabilities of a bailee. That this was the intent of the Law Revision Commission is clear from the following language of its said report: " The garagekeeper is considered throughout this study as a bailee for hire. Whether he is in fact a bailee depends upon whether he has possession of the automobile. He could be a lessor of space as to some customers, who store their cars in the garage and retain the keys, and a bailee as to others whose cars are delivered to him for storage. If there is a bailment, the bailee for hire in the absence of special contract owes a duty to exercise ordinary care in the preservation of the property deposited with him." (1949 Report of N. Y. Law Revision Commission, p. 810.)

The question then presents itself whether the relationship between the plaintiff and defendant was that of bailor-bailee. If it was not, the prohibition of section 89-b would not apply.

In the case of *Mays* v. *New York, N. H. & H. R. R. Co.* (197 Misc. 1062) the court defines a bailment as follows (pp. 1063–1064): " A bailment is defined as a delivery of personal property for some particular purpose, or a mere deposit, upon a contract express or implied, and that after such purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions or kept until he reclaims it, as the case may be (6 C. J., Bailments, § 1). It is essential that there be either an actual or constructive delivery by the bailor as well as actual or constructive acceptance by the bailee (*Osborn* v. *Cline,* 263 N. Y. 434, 437).''

In the *Osborn* v. *Cline* case, the court said at page 437: " Whether a person simply hires a place to put his car or whether he has turned its possession over to the care and custody of another depends on the place, the conditions, and the nature of the transaction. (*Galowitz* v. *Magner,* 208 App. Div. 6.) * * * One of the essential elements of a bailment is that property be taken into the possession of the bailee." (Citing cases.)

Continuing at page 438, the court went on to say: " Any house or lot owner may permit for a fee another to put his car on the premises without becoming a bailee or assuming any responsibility for its safety. It all depends on the facts." (Citing cases.)

A case very close on the facts to the one at bar, is *Hogan* v. *O'Brien* (123 Misc. 865, affd. 212 App. Div. 193). There the defendant occupied a building in which he rented space for storage for automobiles. The plaintiff stored his car in the garage under an arrangement where he could put his car in and take it out at will at any hour of the day or night. He was given a key to the garage and after the garage was locked up at midnight, he could open the door and go in and get his car and put it back without any supervision on the part of defendant or his employees. The defendant posted large placards about the building and at the entrance warning customers that he would not be responsible for cars. After the plaintiff had continued to store his car in defendant's garage for some time, he found one morning that it had disappeared. He brought an action against defendant claiming the car was lost through fault of the defendant.

In granting a nonsuit and setting aside a verdict for the plaintiff, the court said at pages 867–868: "Was this contract bailment at all? The suit proceeded all the way through on the theory of bailment, but the facts of the case do not seem to me to fit the definition of bailment. Bouvier defines bailment as 'A delivery of something of a personal nature by one party to another, to be held according to the purpose or object of the delivery, and to be returned or delivered over when that purpose is accomplished.' The word 'bailment' comes from the French word *bailler,* which means to deliver. But one cannot deliver, unless there is someone to deliver to. In the case before us, the customer can come in at any hour, even after the garage is locked at midnight when nobody is there, and leave his car in the space allotted to him. Is that bailment? Is that the delivery of goods by one person to another? The circumstances of this case, the nature of the contract, seem more analogous to the renting of stalls in a market. In such an instance the landlord rents only space. That is all the defendant did here. For eight dollars a month he gave the customer permission to bring his car in from the street and stand it in his building. He gave it shelter from the elements. In winter, perhaps, he gave it heat. But he had no control over it and did not watch it or assume to guard or protect it. Surely he did not insure it. He did nothing more or different than the owner of the market does who rents out the stall. The contract does not look like bailment to me. Of course, if it is not bailment, the defendant is only responsible for wanton negligence."

Likewise in the case at bar, there was no one to whom the plaintiff had to deliver his car. Plaintiff was assigned a specific space to park his car. He testified that he had his own keys to the garage, he always parked the car himself and did not turn his car keys over to anyone. There was no supervision or control whatsoever by the defendant. No watchman or other representative of the defendant was furnished to participate in the moving or placing of the cars. The defendant did not undertake to watch the cars nor assume the guarding or protection of same against damage. The plaintiff did not deliver possession of the car to the defendant at any time. I find, therefore, that the relationship between plaintiff and defendant was not that of a bailor-bailee but that of lessor-lessee which, indeed, it purported to be by the very terms of the lease agreement. The Legislature did not and could not impose a relationship upon the parties other than what they contracted for. Section 89-b of the General Business Law did not make this landlord a bailee of plaintiff's car. It did not impose upon him any responsibility or liability other than what he contracted for. The exemption clause in the lease herein cannot be said to fall within the prohibition of section 89-b.

However, even were I to hold otherwise, the result would still have to be the same. Section 89-b does not impose any absolute liability upon a garagekeeper. It does not make him an insurer of the safety of the cars stored in his garage. It merely prohibits an exemption of liability for his acts of negligence or those of his agents or employees. Before a patron may in any event succeed, he must show that his car was damaged due to some act of negligence of the garagekeeper, his agents or his employees. Here the plaintiff failed to show any negligence on the part of the defendant or any of its representatives. Concededly there was no supervision over the garage but plaintiff has not shown that the damage to his car arose because of such lack of supervision within the defendant's garage. As the court said in the *Hogan* v. *O'Brien* case (*supra,* p. 867): " Assuming every fact to be true that the plaintiff contends for, was the defendant negligent as a matter of law? This question the court must answer. The answer, it seems to me, must be in the negative. A bailee is never an insurer. * * * He [the defendant] contracted merely to shelter the cars, not to guard or insure them."

It was this reasoning that the Appellate Division of the Third Department followed in affirming the order (212 App. Div. 193), saying at page 196: " It follows that no inference of the defend-

ant's guilt, in preference to the guilt of any of the others, remained, after the proof was given, to justify a verdict against the defendant. Moreover, the defendant was not chargeable upon the theory that he negligently gave out keys. The plaintiff was cognizant of the fact and consented to the arrangement which was in part for his own convenience.''

So, here, no inference of the defendant's guilt can be made from the facts proven in the case. The plaintiff was well aware when he entered into the arrangement with defendant that there would be no supervision of the garage by defendant and that others would be given keys to the garage with the same rights as plaintiff enjoyed. He acquiesced in same. It was an arrangement as much for plaintiff's convenience as any of the others. No negligence on defendant's part has been shown.

At the close of the plaintiff's case the defendant moved to dismiss the complaint on the grounds that the plaintiff had failed to show any negligence on the part of the defendant. I reserved decision on the motion. After defendant rested, it renewed in its motion, and I again reserved decision. I now grant the motion for the reasons set forth above.