Bichard W. Waldach, J.
This action by a car owner against a garage for unexplained disappearance and subsequent damage of the vehicle requires consideration of the detailed written contract executed and exchanged by the parties prior to the loss. Essentially this contract purports to create a long-term lease of space, and expressly negatives a bailment. The question presented here is whether this arrangement falls afoul of the statutory policy expressed in the General Obligations Law.
Generally, the owner of an automobile and the owner of real property are contractually free to define their relationship as that of licensor-licensee as contrasted with bailor-bailee (Osborn v. Cline, 263 N. T. 434; Greene Steel & Wire Co. v. Meyers Bros. Operations, 44 Misc 2d 646). Nothing in section 5-325 of the General Obligations Law interdicts the fashioning of a licensorlicensee relationship (Rudolph v. Riverdale Mgt., 202 Misc. 586). The statute does provide that a garage owner may not exempt himself from the consequences of his own negligence where it causes damage to the owner’s vehicle.
The stipulated facts in this case are silent with respect to negligence by defendant, undoubtedly because negligence cannot be established. Hence it follows that, as far as this claim for car loss and damage is concerned, the storage contract does not have the effect of exonerating defendant from any negligence in violation of section 5-325. On the contrary, the impact of the contract signed by plaintiff here is not to exonerate negligence (an illegal result under the statute), but to extinguish the presumption of negligence that loss in the context of a bailor-bailee relationship might otherwise impose (Fidelity & Guar. Ins. Corp. v. *191 Ballon, 280 App. Div. 373; Claflin v. Meyer, 75 N. Y. 260; Stewart v. Stone, 127 N. Y. 500).
This is not to suggest that the court finds every provision in this contract immune from possible conflict with section 5-325. Whether defendant can escape liability for the negligence of its own employees, once established, by the mere contractual attribution of those employees to the car owner as the latter’s agent, appears somewhat dubious. Even if the court were to determine that this provision is invalid, however (but, cf., Allen v. German Amer. Ins. Co., 123 N. Y. 6; Chase v. Hamilton Ins. Co., 20 N. Y. 52; Hand’s Jewelers of Riverhead v. New Zealand Ins. Co., 35 A D 2d 673) it is not before the court in the present case, and it is entirely severable from the other clearly valid portions of the contract (Colla-Negri v. Colla-Negri, 19 Misc 2d 496; Morgenstern v. Morgenstern, 27 A D 2d 560; Steinlauf v. Delano Arms, 15 A D 2d 964).
This case is also to be distinguished from the “ parking ticket contract ” cases such as Continental Ins. Co. v. Meyers Bros. Operations (56 Misc 2d 435); Ellish v. Airport Parking Co. of Amer. (66 Misc 2d 470), and Makower v. Kinney System (65 Misc 2d 808). Here there is a formal printed instrument executed and exchanged between the parties.
Viewed in broad perspective, there would seem to be no sound objection to permitting the operators of long-term parking facilities and motorists who desire to use them to agree upon an apportionment of the risks which leaves the motorists responsible for unexplained disappearance and loss. The motorists can easily obtain theft insurance, and the likelihood of insurance coverage is a pertinent factor in determining the allocation of risk of loss (see Uniform Commercial Code, § 2-509, Official Comment, No. 3). Avoidance of frequent double insurance may result in the advantage of reduced rates being passed along to the consumer. From the exhibits made part of the record, the court notes that the rental for this metropolitan garage space in 1969 was $35 per month, a rate which could well be reflective of such risk apportionment here.
Accordingly, it is unnecessary for the court to pass upon that portion of the contract which purports to limit liability for negligence to the maximum sum of $100.
The complaint must be, and is, dismissed in its entirety.