OPINION OF THE COURT
Barry Salman, J.
In this case tried without a jury, the court makes the following findings of facts and conclusions of law. Thomas Re, an officer of plaintiff’s subrogor, parked and locked an automobile in the defendant’s garage on the night of July 16, 1976 at or about 7 p.m. He had maintained a parking space therein since 1969 pursuant to a written "Full Time storage contract” which incorporates by reference a four page "General Terms and Conditions” pamphlet, dated December 1, 1967.
These terms and conditions include, inter alia, the following:
"(F) A specific space designated or assigned in customer’s storage contract form * * *
*340 "(H) Company shall not be held responsible for damages resulting from negligence * * * other than an employee of the company acting under and during regular assignment of his 'duties as such.’
"(I) It is agreed that upon acceptance of the customer’s car for storage, the relationship at all times between the parties shall be that of landlord and tenant and not bailor and bailee.
"(J) It is agreed that upon acceptance of the customer’s car, that the company does not undertake to protect the customer’s car from damage or theft.
"(P) If the provisions of Paragraphs H,I,J,K,L or N or any part of them shall be held invalid * * * it is agreed that the company’s liability shall be limited to $100.00.”
The defendant’s garage is an indoor parking garage with but one door to provide entrance and exit for vehicles. It has an office located at the bottom of the driveway ramp where the attendant stays.
Ninety per cent of the cars have specific spaces, wherein the vehicles are parked and not moved except by the automobile owner. However, 10% of the automobiles, including the subject vehicle, are deemed "floaters”, for which there is no permanent space. These the defendant’s employees move about at will to maximize the use of the limited garage space available.
For these "floater” automobiles, at the defendant’s request, a duplicate set of car keys is kept on a pegboard located in the unlocked garage office. The keys to the office itself are kept in a desk drawer located in the office. An attendant in the employ of the defendant is on duty at all times. He takes care of the garage and moves the "floater” cars around the garage with the use of the duplicate sets of keys.
The instant vehicle was parked in a space located near the office at 7 p.m. on July 16, 1976. It had not been moved when the following events transpired. At or about 1 a.m. of July 17, 1976, two men were observed by the attendant who was in the back of the garage to be walking down the entrance ramp. The attendant approximately 400 feet away saw that one of the men was carrying "something”, in his hand. Fearing for his safety he quickly fled the garage by a side pedestrian exit to look for help. Thereafter, he returned to the garage and discovered that the subject vehicle and its keys were missing. *341 The court again notes that the keys had been left on a pegboard in the unattended and unlocked office.
There was testimony that there was a "total loss” of the subject vehicle and that its value was $6,239.86. The testimony further showed that Rex Pontiac was paid the sum of $6,139.86 by its insurance carrier, the plaintiff subrogee in this action and that the insurance carrier received $1,207.66 as salvage for the vehicle.
The plaintiff subrogee contends that the alleged exemption clause in the agreement is invalid as contrary to public policy as provided for under section 5-325 of the General Obligations Law; that the relationship between the parties as applied to the stored vehicle was that of bailor-bailee and that the defendant was negligent in the care and control of the vehicle and is therefore responsible for its loss. The defendant contends that the plaintiff subrogee is an improper party to bring this action; that the written agreement changed the relationship of the parties to lessor-lessee and that therefore no bailment existed; that the change in legal relationship removed the agreement from the restrictions of the General Obligations Law; that the limitation of liability as set forth in the agreement is valid and that the defendant was not negligent.
The trial evidence showed that Mr. Re was an officer of Rex Pontiac and that he had full authority to park the vehicle at a location of his own choosing. It is clear that he executed the agreement in question and in fact stored the vehicle in question at the garage. The plaintiff is the subrogee of Rex Pontiac and as such was assigned all the rights, title and interest to the automobile by a bill of sale dated August 2, 1976. As assignee subrogee and owner in fact the plaintiff had the same rights as its assignor subrogor and there is no question that the plaintiff has a right to sue for the loss of the automobile. (CPLR 1004; Sheridan v Mayor, 68 NY 30.)
From the evidence it appears that a leasehold relationship was intended by the parties. If parties seek to change their relationship and in fact execute documents which express their intention they may do so. (Langenthal v American Stuyvesant Garage, 72 Misc 2d 189; 5 NY Jur, Bailments, § 80.) The attempted change of relationship between the parties in and of itself is not contrary to section 5-325 of the General Obligations Law. However the consequences of an act of negligence on the part of the lessor or his employees may *342 not be contracted away. The condition of nonliability for theft sought to be imposed by the changing of the relationship is unenforceable if negligence on the part of the defendant is shown. (Corrao v Dewey Garage Corp., 24 NYS2d 592; General Obligations Law, § 5-325.) The questions which must be addressed by the court are, was the defendant in fact negligent? If yes, could it by agreement limit its liability?
The defendant contends that it was not responsible for the loss of the vehicle because as a garagekeeper it is not an insurer. In addition the defendant contends that there was no negligence because the automobile was stolen.
Ordinarily loss by theft constitutes a good defense. However, it will not stand in face of proof that the negligence of an employee of the defendant contributed to the theft and made it possible. (Arnold v Kensington Plaza Garages, 179 Misc 697; Atlas Assur. Co. v Barry Tire & Serv. Co., 3 AD2d 787; Hogan v O'Brien, 212 App Div 193; Corrao v Dewey Garage Corp., supra.)
In a situation where in the ordinary course of events an occurrence would not have taken place but for want of proper care, and testimony is presented setting forth acts which constitute lack of proper care then the responsibility for the loss incurred should be on the person responsible for such lack of care. (Osborne v Cline, 263 NY 434; 131 ALR 1175.) The evidence showed that a set of ignition keys in the possession of the defendant was in clear and open view on a pegboard in the unlocked and unattended office.
The independent act of a thief does not exonerate the defendant from the liability when it was negligent in failing to take adequate precautions and safeguards to protect the items under its control. (Hogan v O'Brien, supra; 25 NY Jur, Garages, Filling and Parking Stations, §§ 39, 40.)
The final contention of the defendant is that even if it is found to be negligent it has limited its liability to $100 per loss under the terms of the written agreement as set forth in clause "P”. The applicable portion of said paragraph reads as follows: "Company’s liability for any claims * * * whether for complete or partial loss, shall be limited to $100.00 unless in the case of a claim for the loss of the Customer’s automobile the value thereof shall have been declared to be in excess of $100.00, and charges for such greater value shall have been paid by customer to Company. It is understood and agreed that such additional charges will be equal to that of the *343 standard rate for fire and theft insurance coverage in the State.”
Defendant’s reliance on Langenthal v American Stuyvesant Garage (72 Misc 2d 189, supra) in support of this contention is inappropriate. The automobile in that case was parked and locked by the driver, and the disappearance of the automobile was unexplained. The issue of limitation of liability was never before the court.
The car in this case was fully insured and it is the subrogee assignee who is suing for the loss. The contention is that the defendant was negligent.
Once negligence has been determined can the defendant exempt itself from liability for its negligence? If not allowed to exempt itself from liability can it so narrowly limit its liability (to $100 per loss), for negligence? It is manifestly clear that the defendant cannot exempt itself from liability for its negligence. Section 5-325 of the General Obligations Law states in pertinent part, "No person who conducts or maintains for hire or other consideration a garage * * * may exempt himself from liability for damages for injury to person or property resulting from the negligence of such person, his agents or employees * * * any agreement so exempting such person shall be void”. (Langenthal v American Stuyvesant Garage (supra, p 191), a case involving the same defendant and written agreement involved herein states "Whether defendant can escape liability for the negligence of its own employees, once established, by the mere contractual attribution of those employees to the car owner as the latter’s agent [par L] appears somewhat dubious.” It goes on to point out that the issue of negligence was not involved in that case. The facts in this case distinguish it from those cases which have held that parties may agree to apportion risk for parking privileges and to change the relationships of the parties to leasehold. (Rudolph v Riverdale Mgt., 202 Misc 586; Hogan v O'Brien, 212 App Div 193, supra; Rembert v Co-op City Parking Garage No. 2, 86 Misc 2d 399.) In this case the court finds that negligence has been established. The court finds that the purported $100 limitation is a limitation which attempts to obviate responsibility that in fact it is tantamount to an exemption and contrary to section 5-325 of the General Obligations Law. (See Honigv Riley, 244 NY 105; 14 NY Jur, Damages, § 155.)
The court finds that the defendant was in fact negligent and could not limit its liability and finds judgment in favor of the *344 plaintiff in the amount of $5,032.20, plus interest from July 17, 1976.