OPINION OF THE COURT

Per Curiam.

Judgment entered May 25, 1978 affirmed, with $25 costs upon the well-reasoned opinion of Salman, J., at Trial Term.
The plaintiff is the subrogee of the owner of a 1976 Pontiac automobile. That vehicle was stolen from the defendant’s garage on July 16, 1976 at approximately 4:00 a.m. Immediately prior to the theft the garage attendant had been moving cars in the rear of the garage. He observed two men, carrying what may have been a gun, approaching him from approximately 400 feet away, and fled the garage through a rear door. The keys to the vehicle in question were kept on a pegboard in the garage office, the door of which was not locked. When the attendant returned to the garage about 25 minutes later the subject vehicle had been taken.
The vehicle had been garaged on defendant’s premises under a contract which provided, inter alia, that the defendant did not protect the customer’s car from theft, that the relationship between the garage and the customer was to be considered that of landlord and tenant, not bailor and bailee, *889 and that if the ^foregoing provisions were deemed invalid or contrary to public policy, the defendant’s liability would be limited to $100, unless the plaintiff declared a greater value and paid to the defendant an amount equal to the cost of the theft insurance. The court below awarded the plaintiff the sum of $5,032.20 for the loss incurred as a result of the theft of the vehicle in question by reason of the defendant’s negligence. We affirm that award.
The ordinary relationship between a customer and a garage owner is that of bailor and bailee and certain legal rights and liabilities mark that relationship (25 NY Jur, Garages, §§ 31, 38, pp 130, 131). The burden is always on the customer to prove lack of due care in safeguarding his vehicle in order to recover for its loss. However, upon a mere showing that he delivered the vehicle to the bailee and the failure or refusal of the bailee to return it, the burden of going forward with the evidence shifts to the bailee. If he then shows a reasonable explanation for the failure to return (e.g., as by the intervention of a criminal agency), the customer, to recover, must now show that the negligence of the bailee brought about that occurrence (25 NY Jur, Garages, § 39; Richardson, Evidence [10th ed], § 109; Hogan v O’Brien, 212 App Div 193, 194; Claflin v Meyer, 75 NY 260). But not every parking arrangement gives rise to a bailor-bailee status. The key words are dominion and control by the bailee. Thus in the so-called Airport parking cases, the parker is merely renting space; he is a type of temporary licensee. The mere failure to return his car to him, absent proof of negligence, gives rise to no presumption in his favor (Rembert v Co-op Parking Garage No. 2, 86 Misc 2d 399; Ellish v Airport Parking Co. of Amer., 69 Misc 2d 837, affd 42 AD2d 174, affd without opn 34 NY2d 882; Greene Steel & Wire Co. v Meyers Bros. Operations, 44 Misc 2d 646; Security Mut. Ins. Co. of N. Y. v Airport Parking Co. of Amer., 68 Misc 2d 628; Peralta v Port of N. Y. Auth., 76 Misc 2d 1086, 1087). As noted in a leading case, Osborn v Cline (263 NY 434, 437, 438), "Where a person simply hires a place to put his car or whether he has turned its possession over to the care and custody of another depends on the place, the conditions, and nature of the transaction * * * It all depends upon the facts.”
In the absence of contractual provisions to the contrary, the facts in this case would spell out that type of control by the defendant that points ineluctably to a bailee arrangement. *890 The customer may park his own car or, if his spot were taken, the attendant would park it. He was required to give the garage keeper a set of his keys; his car is moved if required. The garage contract at issue, however, specifically provided that the relationship between the garage and the customer was that of landlord-tenant, not bailor-bailee. In Langenthal v American Stuyvesant Garage (72 Misc 2d 189, 190) the court said the parties were "contractually free” to thus define their relationship without violating section 5-325 of the General Obligations Law.* The result of the clause, which provided that the relationship between the garage and its customer was that of landlord-tenant, was that it extinguished "the presumption of negligence that loss in the context of a bailorbailee relationship might otherwise impose.” The court said (p 191) that "[v]iewed in broad perspective” such "apportionment of risks” which left the customer responsible for "unexplained disappearance and loss” was not objectionable. In the Langenthal case, however, there was no proof of negligence in that case. To relieve the garageman from the burden of going forward with the evidence when the car is missing due to unexplained disappearance is one thing; to relieve him from the effect of his own negligence is quite another, viz., a result specifically forbidden by statute and thus contrary to the expressed public policy of the Legislature (General Obligations Law, § 5-325).
In the instant case, the court below found negligence from the fact that the keys to plaintiff’s car were left in clear and open view on a pegboard in an unlocked and unattended office, and that finding is fully warranted by the evidence presented. (Arnold v Kensington Plaza Garages, 179 Misc 697, 699; Corrao v Dewey Garage Corp., 24 NYS2d 592.) The case of Jacobs v Alrae Hotel Corp. (4 AD2d 201) cited by the defendant is clearly distinguishable, in that the open safe in that case was not the proximate cause of the loss; the robbers could have forced the hotel keeper to open it, since he was there.
It should further be pointed out that there is nothing magical about the landlord-tenant relationship that negates liability for negligence under all circumstances (cf. Sherman v *891 Concourse Realty Corp., 47 AD2d 134; Delipetros v Ginsberg, NYU, Nov. 1, 1978, p 6, col 1). The court below correctly found (94 Misc 2d 338, 343) that the attempt to limit liability for negligence to $100, unless an added payment equal to the cost of a theft insurance policy was paid was an attempt to "obviate responsibility” and "tantamount to an exemption and contrary to section 5-325 of the General Obligations Law”. Limitation of liability for negligence clauses may be enforced but they are "closely scrutinized” and will not be acceptable if they fall within a category where "the public interest is directly involved” (Ciofalo v Vic Tanney Gyms, 10 NY2d 294, 297; see, also, 14 NY Jur, Damages, § 155, p 4). That public interest has been codified in section 5-325 of the General Obligations Law. The ordinary limitation of liability clauses in which a set maximum is payable for losses for any reason but a greater amount is payable upon the payment of a greater consideration is usually found in cases of common carriers (Conklin v Canadian-Colonial Airways, 266 NY 244) and ware-housemen (by statute — see Uniform Commercial Code, § 7-204, subd [2]). Even in the case of landlord-tenant relationship where a statute similar to section 5-325 of the General Obligations Law applies (see General Obligations Law, § 5-321), under certain circumstances, clauses limiting liability have been upheld where the courts have found that there was no contracting away of liability (Brentano’s v Charter Mgt. Corp., 46 AD2d 861). Melodee Lane Lingerie Co. v American Dist. Tel. Co. (18 NY2d 57, 69) relied on by appellant is not apposite. It deals with section 5-323 of the General Obligations Law and suggests that "it is possible for parties to limit their liability provided that there is a voluntary choice of obtaining full or limited liability by paying under a graduated scale of rates proportioned to the responsibility in transportation or other service rendered”. However, that limited liability (not actually present in the case) would not have limited the alarm company (defendant) from liability to the tenant of the building but only to the landlord who would have sought indemnity from the defendant. The potential recovery of the tenant, for whose benefit section 5-323 of the General Obligations Law was enacted, was not being limited. "This is not to contract away liability” (cf. 614 Third Ave. Corp. v Grand Iron Works, 44 AD2d 531). The limitation in this contract was an attempt *892 to evade the clear intent of section 5-325 of the General Obligations Law and may not bar recovery, albeit by a subrogated insurer.
Concur: Dudley, P. J., Tierney and Riccobono, JJ.

 “No person who * * * maintains * * * a garage * * * may exempt himself from liability for damages for injury to * * * property resulting from the negligence of such person, his agents or employees * * * Any agreement so exempting * * * shall be void.”