OPINION OF THE COURT
Michael L. McCarthy, J.
The plaintiff having moved for summary judgment, and the defendant having cross-moved for summary judgment, the facts are those uncontroverted assertions and exhibits found in the complaint, and the affidavits which were attached to the moving papers.
The plaintiff, on June 13, 1971, at about 7:30 p.m., entered a parking lot operated by (but not owned by) the defendant corporation. Plaintiff paid the attendant the parking fee (defendant said this was a nominal flat rate of 50 cents at that time) and was directed to park his 1968 Chevrolet Corvette roadster, and take his keys with him.
At approximately 11:30 p.m., the plaintiff returned to the parking lot and found his auto had been burglarized and vandalized. He further stated that the attendant appeared to be in an intoxicated condition when the plaintiff returned, but had seemed sober when he had first left his car.
The convertible top had been slashed; driver door window smashed; driver door upholstery slashed; seats slashed; dash panel slashed, and a stereo tape deck and eight cartridge tapes were stolen. Total damage, which is not disputed by the defendant, was $506.
The defendant, in its answer, generally denied the plaintiff’s allegations. In its affidavit in support of its later motion for summary judgment, the defendant indicated that this incident took place at 505 Washington Street in downtown Buffalo.
The defendant said it was the operator of the parking lot but not the owner. It further alleged that the lot had a sign posted showing rates, and the fact that the lot closed at 9:00 p.m. The lot was not fenced, and the lot attendant did not take possession of the autos or their keys. Defendant’s president said it was not customary for the lot attendant to remain after the 9:00 p.m. closing time, but he did not know personally whether or why the attendant remained until the 11:30 p.m. discovery time.
The unfenced lot had available ingress and egress on Wash *945 ington Stree, Ellicott Street, and through an adjacent lot to Huron Street. The court takes notice of the fact that that location was on the east side of downtown Buffalo. Further, that in June, 1971, that location was on the westerly edge of what could euphemistically be called a "high crime area”. There was no indication by either party as to the time the alleged vandalism occurred.
The defendant denies liability on the basis that it never took possession of the plaintiff’s auto; that the claim ticket contained a liability disclaimer, and that the damage occurred after closing, so that they were no longer responsible.
The legal history of this type of incident has revolved about the question as to whether there was a bailment created, and which standard of care therefore applied (see, e.g., 25 NY Jur, Garages, § 31 et seq.; 5 NY Jur, Bailment, §§ 14, 17, 58, 85, 88 et seq.; 2A Warren’s Negligence, ch 14, § 5.01 et seq.; § 5.06 et seq.; 2B Warren’s Negligence, ch 48, § 2.06 et seq.; §5; 4B Warren’s Negligence, ch 55, § 1.02 et seq.; 3 Abbott’s Digest 2d, Bailment, §§ 1, 5, 11, 14 et seq.; Ann. 131 ALR 1175; Ann. 7 ALR3d 924; General Obligations Law, § 5-325). Traditionally, great emphasis was placed on whether the relationship was that of lessor-lessee, licensor-licensee, or bailor-bailee (see, e.g., Ann. 7 ALR3d 924, 931, § 2). This in turn determined whether there was a duty of care owed, and which standard of care (e.g., liable only for gross negligence, ordinary care, or strict liability — res ipso) would be applicable.
Since we are bound by stare decisis we must first look to controlling precedent in the Fourth Judicial Department and the Court of Appeals. The earlier case in these two jurisdictions is Osborne v Cline (263 NY 434).
The Court of Appeals decided in Osborne v Cline (supra, p 437) that recovery depends upon establishing bailment: "Whether a person simply hires a place to put his car or whether he has turned its possession over to the care and custody of another depends on the place, the conditions, and the nature of the transaction.” The gravamen is one of choice. "This sign might not relieve the defendant for his negligence if he were in fact a bailee, but it was a circumstance to be considered as bearing upon the question whether for a fee of twenty-five cents the defendant merely permitted auto drivers to use his ground. Any house or lot owner may permit for a fee another to put his car on the premises without becoming a bailee or assuming any responsibility for its safety” (supra, pp *946 437-438). Query: Is the second "or” in the last sentence quoted above disjunctive or conjunctive? This appears to be the last time the high court of this State has spoken to this precise issue.
The Fourth Department’s leading case is Potomac Ins. Co. v Donovan (274 App Div 666). In that case, the Appellate Division reversed a finding for the defendant on his motion to set aside a jury verdict for the plaintiff for damages to his stolen car.
"The court properly left to the jury the question of whether or not the transaction created the relation of bailor and bailee between the car owner and the defendant (Osborne v. Cline, 263 N. Y. 434, 437). The jury’s general verdict in favor of the plaintiff necessarily includes a finding of bailment.” (Supra, p 669.)
"While the allegation in the plaintiff’s complaint that the car had been stolen precludes the presumption that otherwise would arise from demand and refusal to deliver the car (see Claflin v. Meyer, 75 N. Y. 260), still that allegation in the complaint does not destroy any inference of negligence which might otherwise be drawn from the facts and circumstances.” (Supra, p 669.) "While the burden remains at all times upon the plaintiff to establish the defendant’s negligence, that does not mean that he is required to adduce evidence pointing out the precise negligent act or omission. The surrounding facts and circumstances may be such as to permit an inference of negligence. Where the situation is such that in the ordinary course of events the theft would not have occurred but for want of proper care on the part of the bailee, his failure to show that he had taken such precautions as ordinary prudence would dictate, where proof if it existed, would be within his power to produce, may subject him to the inference that such precautions were omitted (Russell Mfg. Co. v. New Haven Steamboat Co., 50 N. Y. 121, 126-128; Ouderkirk v. Central Nat. Bank, 119 N. Y. 263; Wilson v Christal, 187 App. Div. 660, 662; Hogan v. O'Brien, 212 App. Div. 193, 195; Wintringham v. Hayes, 144 N. Y. 1, 5; Galowitz v. Magner, 208 App. Div. 6, 9).” (Supra, p 669.)
The gravamen of the Potomac Insurance case seems to be the drawing of distinctions between the presumptions of negligence for the nondelivery of a bailed chattel, the rebutting of that presumption by proof the chattel was stolen, and the inference of negligence created by the fact of the theft. The *947 court does not discuss what indicia of bailment were placed on the record, or the sufficiency of such evidence. This differs markedly from most other lower and appellate court decisions throughout the State. Most other cases are more concerned with whether a bailment was created, and facts which did or did not create it.
In the instant case, the court must make a finding, as a matter of law, as to whether liability will attach. If we must find a bailment, there are no useful guidelines in the Potomac case. Thus, it is necessary to look to other departments to find the necessary guidelines.
One of the earlier cases is Galowitz v Magner (208 App Div 6). This case had a fact situation similar to the Potomac case (supra), but in Galowitz, the court said the plaintiff has the burden of proof as to defendant’s negligence. This was not charged to the jury, so the appellate court reversed with dicta to the effect that plaintiff should have little difficulty in showing the defendant’s negligence in allowing plaintiff’s auto to be stolen.
In Nargi v Parking Assoc. Corp. (36 Misc 2d 836) the New York Civil Court found that the failure to fence the parking lot, from whence the plaintiff’s car was stolen, was negligence. The court then went on to say: 'T find that plaintiff’s car was turned over to the care and custody of the defendant as bailee. This was not a gratuitous bailment. The plaintiff, who paid a fee, was in fact a bailor for hire. The fact that the fee was small is beside the point and further plaintiff was not offered a choice of rates. In any event, placing the label of 'bailment’ or license’ upon the transaction is considered immateral to my ñnding of liability, since the defendant did not exercise sufficient care to protect the property of its customer, the plaintiff. (Cf. Rubin v. Forwarders Auto Trucking Corp., 111 Misc. 376 [App. Term, 1st Dept.].)” (Supra, p 839; emphasis supplied.)
Thus, the court decided that there was a bailment, and added that he need not decide that issue, because there was a failure to exercise reasonable care. We are still left wondering whether the above emphasized statement is merely dicta, since the court did find a bailment, and negligence.
In Sherber v Kinney Systems (42 Misc 2d 530) the Civil Court in New York City found that there was a bailment, but did not say why. There is a lengthy discussion of the standard *948 of care, but the gravemen of the decision is clearly fitting the facts into the bailment "pigeonhole”.
Greene Steel & Wire Co. v Meyers Bros. Operations (44 Misc 2d 646) is the original Kennedy Airport case which is later cited as controlling precedent in the First Department. "Whether a person simply hires a place to put his car or whether he has turned its possession over to the care and custody of another depends on the place and conditions of the transaction * * * The manner of operation of defendant’s parking lot, the posted signs and the ticket plaintiff obtained defining the service sold, and the circumstance that plaintiff never surrendered possession or control of its vehicle to the defendant, establish that the plaintiff acquired a mere license of privilege to park its car.” (Supra, p 647.) The signs and ticket stated: " 'This contract licenses the holder to park 1 automobile in this area at holder’s risk * * * Only a license is granted hereby and no bailment is created.’ ” (Supra, p 647.) The irony is that in Makower v Kinney System (65 Misc 2d 808) where Greene was found to be controlling, the court completely discounted the statements on the signs and tickets as being void under section 5-325 of the General Obligations Law.
The court, in Greene, did not find it necessary to comment on the effects of that section which went into effect one month before the decision date (it was not new law, however — see General Business Law, former § 89-b). This same court in 1971, in Security Mut. Ins. Co. v Airport Parking Co. of Amer. (68 Misc 2d 628) found section 5-325 of the General Obligations Law negated the limitation on exemption from liability on the signs and tickets, but felt the Greene case was still good law, and in fact the majority position. All that remains of the rationale from Greene is that the plaintiff parked his own car and kept the keys. This has not been found, in recent cases to mean that a bailment had not been created. In Makower, the court points this fact out in its self-contained dissent against the precedent controlling Greene case.
In Silberman v Olympic Parking Serv. (60 Misc 2d 68), the plaintiff’s auto was stolen from a parking lot at Aqueduct Race Track. Defendant argued that there was no bailment, nor proof of negligence. Plaintiff parked and locked his auto and kept his keys. He did not receive any receipt, which apparently means the lot was unattended. There is no indication whether there was a parking fee. The court concluded *949 plaintiff had acquired a mere license, and even if there were a bailment, plaintiff did not show any negligence. The second conclusion does not follow the majority rule that nondelivery of a bailed chattel is presumptive evidence of negligence. This case probably turns on the fact that the plaintiff paid no consideration for parking per se. If there were an entrance fee paid upon entry to the race track in an auto, plus an individual fee paid by persons entering the track, the plaintiff might have had a better case. A separate fee could be used to show bailment under the traditional rationale.
In Liberty Mut. Ins. Co. v Meyers Bros. Operations (64 Misc 2d 648) the subrogor parked his auto at an airport parking lot, locked it, and removed the keys. When he returned two days later, the auto was gone. The defendant said this was a licensee-licensor relationship, and the court, after agonizing over that claim, never really said why it was not such a relationship. Instead, the court stated: “The real question appears to be the degree of control that a defendant exercised over the subject property. That question should not be decided in a vacuum, and the court should and does take cognizance of the realities” (supra, p 649).
The court concludes that the plaintiff was a virtual captive of the defendant. Next, the court articulates all the facts and circumstances which it could easily have couched in terms of foreseeability of the theft of the auto. Instead, without further legal and semantic gymnastics, it concludes: “The court finds delivery of the vehicle under such compelling circumstances to the defendant constitutes a bailment” (supra, p 650).
In Palazzo v Katz Parking Systems (64 Misc 2d 720), the plaintiff’s auto was vandalized while parked in defendant’s parking garage, where plaintiff himself parked the car and took his keys. The court stated that to recover, the plaintiff must show a bailment, and bailment will depend on whether possession was delivered. That question will in turn depend on the intention of the parties, whether express or implied. “Intent may be drawn from the circumstances of the case, i.e., the place, conditions and nature of the transaction”. (Supra, p 721.) The court found that it was the intent of the parties that plaintiff’s auto be protected from vandalism, and therefore there was a bailment.
In Makower v Kinney System (65 Misc 2d 808, supra), a plaintiff is denied recovery on the basis of stare decisis. The Judge stated later in his decision that he disagrees with *950 the conclusion in the case that binds him (cf. Greene Steel & Wire Co. v Meyers Bros. Operations, 44 Misc 2d 646, supra), but he never really articulates what principle he feels is incorrect or wrongly applied. He hints, perhaps inadvertently, that the parking lot operator assumes a responsibility, but then he retreats into the mire of "license” versus "bailment”.
He stated: "It [the use of a ticket dispensing machine] is a calculated risk the operator is taking. But just because it makes later theft easier does not affect the question of whether a bailment is created when a car enters the lot” (65 Misc 2d 808, at p 811). The court’s statement indicates that the theft of plaintiffs auto was reasonably foreseeable. But, liability does not attach, since without a bailment, there is no absolute duty to redeliver the chattel and, thus, no presumption of negligence.
In Ellish v Airport Parking Co. of Amer. (66 Misc 2d 470) the exact fact situation of Makower v Kinney System (65 Misc 2d 808, supra) is found. This decision is dated approximately three and one-half months later than Makower. The result is exactly an opposite! Makower was decided in Civil Court, New York County, and the Ellish case in Civil Court, Queens County.
In Ellish, the court found that the statement on the parking ticket that the plaintiff had merely acquired a license to park was void under section 5-325 of the General Obligations Law as an illegal limitation. Based on the same facts as Makower (supra), this court found that a bailment was created, and recovery allowed on a presumption of negligence for nondelivery of the bailed chattel.
On appeal to the Appellate Term, this decision was reversed. (69 Misc 2d 837, affd 42 AD2d 174.) The Appellate Term reasoned: "Whether or not defendant might have been able to exercise closer supervision is not pertinent to the issue of whether the transaction in fact created a bailment” (69 Misc 2d 837, at p 839). "While defendant could not free itself of liability by virtue of what it had printed on the ticket received by plaintiff (General Obligations Law, § 5-325), the ticket per se furnishes no basis for a finding of bailment. It was not a receipt and contained no description of the vehicle for which it had been issued. Nor did it specify the location in the lot where the vehicle was to be kept.” (Supra, p 839.)
Next, the appellate court in discussing the controlling case in the First Department (e.g., Greene Steel & Wire Co. v *951 Meyers Bros. Operations, 44 Misc 2d 646, supra) stated: "The court there held that the defendant assumed no responsibility for the safekeeping of the vehicle” (69 Misc 2d 837, at p 840). This court then went on to distinguish an earlier case in its department, stating: "the defendant there assumed a greater measure of supervision and control of its parking facilities than is shown in the case at bar.” (Supra, p 840; cf. Dunham v City of New York, 264 App Div 732.)
Finally: "We find no merit in plaintiffs contention that defendant was guilty of negligence, even in the event that there was no bailment. Absent such a relationship, the ordinary principles of negligence would be inapplicable. ” (69 Misc 2d 837, at p 840; emphasis supplied.)
The Appellate Term decision was then appealed to the Appellate Division, where it was affirmed (42 AD2d 174). There, after a short discussion of the history of bailment, the court outlined its overview of the practical considerations involving parking lots in modern society. Implicit in that discussion seems to be a belief that the driver "chooses” where to park, thus binding himself by contract to whatever security is offered by the parking lot operator. This is, of course, absurd, since this case involved public lots at Kennedy Airport, which is isolated from any other parking facilities.
The court went on to distinguish its earlier decision in Dunham (supra) saying that in Dunham, an attendant directed the driver where to park, thus giving the appearance of the acceptance of custody of the car, thereby creating a bailment. Curiously, the next paragraph begins: "We are of the opinion that liability should not be determined by ancient labels and characteristics not connected with present day practices” (42 AD2d 174, at 179).
Ellish is an interesting case, since it inherently, though perhaps unconsciously, contains the emerging modern theory for determining liability in parking lot cases. First, bailment will be the legal key to liability; second, the amount of security will determine whether there is a bailment; third, the easier the operator makes it for the auto to be stolen or vandalized, the less likely he is going to be held liable.
In Security Mut. Ins. Co. v Airport Parking Co. of Amer. (68 Misc 2d 628, supra) the same facts are found as Makower v Kinney System (65 Misc 2d 808; supra) and Ellish v Airport Parking Co. of Amer. (66 Misc 2d 470, revd 69 Misc 2d 837, affd 42 AD2d 174, supra). The Appellate Term reversed the *952 Civil Court, Bronx County, which had granted judgment for the plaintiff stating that it was a matter of stare decisis, citing the Greene case, as in Makower. The court, in its opinion, emphasized that the Greene case was the majority rule across the country, citing: Liability for Loss of or Damage to Automobile Left in Parking Lot or Garage (7 ALR3d 927); 20 Syracuse Law Rev 382; and Wall v Airport Parking Co. of Chicago (88 Ill App 2d 108, affd 41 Ill 2d 506.)
In Langenthal v American Stuyvesant Garage (72 Misc 2d 189), the New York City Civil Court found no bailment, which, by contract, had been abrogated (legitimately — so ruled the court — irrespective of section 5-325 of the General Obligations Law). The contract, in fact, defined their relationship as "licensor” and "licensee”. The contract does not exempt garage owners from liability for negligence, but by agreeing that there is no bailment, there is consequently no presumption of negligence that bailment might impose upon nondelivery.
The only question presented was whether the contract violated section 5-325 of the General Obligations Law. Since there was no allegation of negligence, the court dismissed, since, without the presumption, the plaintiff failed in his burden of proof.
In Stephens v Katz Parking System (75 Misc 2d 690) the key was left with the attendant, and bailment was therefore found. The car was stolen and negligence was presumed because of nondelivery. However, undisclosed items in the trunk of the car were not covered by the bailment contract, since it was not foreseeable that they were there.
In Peralta v Port of New York Auth. (68 Misc 2d 302), the Judge wrote one of the most thorough and thoughtful opinions on this subject that this court has come across. After reviewing the New York law on bailment as it applies to parking lots, he concludes that there was a bailment in circumstances similar to Ellish and Makower (e.g., Kennedy Airport parking lot). The court removes the element of "choice” in entering this particular lot by concluding that the potential customers are all "captured” air travelers who must park where directed by the defendant. Without the element of "choice”, the court infers that fewer indicia of bailment will be required for a finding of bailment, since the bailment relationship implies the necessary element of voluntariness.
On appeal, this decision was reversed (Peralta v Port of New York Auth., 76 Misc 2d 1086). The Appellate Term said there *953 was no bailment. Interestingly, the last sentence of the Per Curiam decision states: "Nor was there proof of a negligent act or omission, in the facts as stipulated” (supra, p 1087). Why, if the court found that there was no bailment, did it feel constrained to say that there was no negligence? Did it mean that, if there were negligence, it would find bailment; or that negligence alone, without a conclusion of bailment, would be sufficient as a theory of recovery?
It is clear, from these cases, that the rationale which was originally used to protect the rights and property of persons leaving their goods with others, now effectively frustrates those rights. This is because the less the indicia of bailment, the less the protection for the goods, and the greater the likelihood of unreimbursed losses. This observation is graphically illustrated in the Ellish case (66 Misc 2d 470, revd 69 Misc 2d 837, affd 42 AD2d 174, supra).
In our society today, the use of the automobile as the main mode of transportation is irrefutably established (with the possible exception of the City of New York). A person does not really choose where to park; he parks as close to his destination as possible. The fee he pays depends more on the distance he must then walk to the main business district or other specific area of attraction, rather than the perceived amount of security offered by supposedly competing operators.
What the developing line of precedent has created, is the absurd situation where, the less an operator spends, the less likely he will be found liable for damage or loss of a vehicle. Thus, even though he may be charging (in the Buffalo-Erie County metro area today) up to $3 per day, per car, for long-term parking, or 50 cents per hour, per car (with an average of 10 cars per space, per day) in a short-term lot, we are not holding him responsible for the care of the property left with him. Therefore, he saves money by putting in a "ticket spitter” instead of an attendant; or posts disclaimer notices which some courts have found significant as evidence of a supposed implied contractual understanding; or by not fencing his lot; or by not providing adequate lighting; or by not providing a guard for security; or by any combination of these factors. The net result is that he saves further sums because he is not found liable for damage or loss to vehicles. This last conclusion may not be entirely true, today in the City of Buffalo, as we shall soon see.
In the City of Buffalo, the money saving bailment rationale *954 is in violation of public policy. Public policy can be established by this court taking notice of the ordinances of the City of Buffalo. Section 393 of chapter V, of the Ordinances of the City of Buffalo states: "Every application for a license here under [annually applied for license of a parking lot] shall be accompanied by a policy of * * * legal liability insurance up to twenty thousand dollars ($20,000.00) for fire, theft, and vandalism, covering vehicles parked or stored on the licensed premises.” (Parking lot is defined under section 340 of Chapter V of the Ordinances of the City of Buffalo, as "any open, outdoor space * * * where more than five (5) motor vehicles may be parked”.)
It should be amply clear that the city fathers intended that those who profit from the storage of vehicles should include the risks of loss or damage to those vehicles as a cost of doing business. This means they determined that increases in rates or loss of insurability should be considered by the operator as a factor in determining whether to fence, light, and how to guard the lot.
The present state of the law in the First and Second Departments of this State seems to force the owner to rely on his own insurance if his auto is stolen or vandalized in a parking lot. That assumes that the owner has theft and comprehensive coverage, or perhaps collision coverage (none of which are mandatory), it fails to take into account that, even with such coverage, there is usually a deductible and higher rates, and non "risk pool” insurability may be affected by the filing of a claim.
If we were to follow the precedent of the down-State courts, we would have a lot of insurance companies receiving premiums, and never paying any claims.
All of this exploration and analysis leads this court to one conclusion: the "bailment theory” as a basis for recovery in parking lot cases is no longer appropriate. We assume this was the state of mind and conclusion reached by the Court of Appeals in 1976, in regard to the archaic distinctions between the status of persons on real property, and the consequent duty of care owed them. (See Basso v Miller, 40 NY2d 233; Parish v Henneherry Road Farms, 39 NY2d 932; Barker v Parnossa, Inc., 39 NY2d 926; Scurti v City of New York, 40 NY2d 433.)
These series of cases: abolished the distinctions between *955 "trespasser”, "licensee”, and "invitee” (see Basso, supra); abolished the "invitee” doctrine (see Parish, supra); abolished the "attractive nuisance” doctrine (see Barker, supra); and discussed the sum total of all of these theories (see Scurti, supra).
The new standard to be followed after these cases was to be "reasonable care under the circumstances whereby foreseeability shall be a measure of liability” (Basso v Miller, supra, p 241). In Basso, the court cited, with approval, the rationale in Kermarec v Compagnie Generale (358 US 625, 630-631): "The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards 'imposing on owners and occupiers a single duty of reasonable care in all the circumstances.’ ”
The same tortured reasoning in the evolution of jurisprudential thought on the question of responsibility for automobiles left with others can be found in comparison to that outlined above in regard to persons or property. The citation at 7 ALR3d 927 is ample proof of the absurd state of the law as to the liability for damaged or stolen autos left in commercial parking lots.
The unarticulated conclusion that this annotation and many others lead to is that the concept of bailment is no longer a viable theory in application to a very real modern problem. Therefore, this court need not decide whether a bailment was created in the instant case. The measure we will apply is that of the Basso case (40 NY2d 233, 241, supra): "reasonable care under the circumstances whereby foreseeability shall be a measure of liability”. In doing thus, this court is not making new law. We are only stripping away the excusatory verbiage from those cases where liability was found for a damaged or *956 stolen auto, under a finding of bailment, but where it was clear that the gravamen was lack of reasonable care.
One of the reasons in applying the Basso rationale is that we are unable to perceive any logical reason why property left on the real property of another should be treated by the law any differently than persons on other persons’ real property.
The presence of insurance shows both the city’s determination that public policy demands that owners or operators of parking lots should be responsible and financially able to pay for damage or theft, and that the owners are in fact able to pay.
When one considers the initial cost today of a passenger vehicle, plus its financing costs; the ravages of depreciation; the cost of repairs; the costs of insurance and license fees; the wear and tear of potholes and salt corrosion, and costs of parking itself, it is a small thing to ask that a parking lot owner at least keep it from being stolen or damaged.
This court finds that the defendant failed to properly protect the plaintiff’s vehicle from damage through the acts of a vandal. The possibility of such acts were clearly foreseeable considering the parking lot’s location, size, and general accessibility. The failure to fence or provide a guard, or to at least direct the patron to a location close to the attendant’s booth are acts of omission which, as a matter of law, constitute negligence.
The court further finds that the attendant’s failure to observe the acts of vandalism — which, by nature of the damage caused, had to be overt and observable — was also negligence, attributable to the defendant. This is true, whether the attendant was officially on duty or not, since the defendant cannot establish when the damage took place. Even though the plaintiff has the burden of proof, since he was not present and the defendant’s employee was, the burden of coming forward with those facts shifts to the defendant.
The plaintiff’s burden is met by his showing that the defendant failed to exercise "reasonable care under the circumstances, whereby foreseeability shall be a measure of liability”. (Basso v Miller, 40 NY2d 233, at p 241, supra.)