OPINION OF THE COURT
Edward H. Lehner, J.
The complainant in this action is suing for the cost of a car radio stolen from his car while parked in defendant’s garage.
FACTS
The plaintiff leased an assigned space in his apartment house garage owned and managed by defendant. The agreement for this space is a “garage space rider” to the plaintiff’s apartment lease in which rider the parties are identified as landlord and tenant. The term expires on the same day as the plaintiff’s apartment lease and the monthly “rental” of $55 is deemed “additional rent” under that lease. No keys were delivered to the defendant. Plaintiff has an expensive car collection, and has executed separate riders for each of his several cars. At trial, plaintiff testified that prior to his renting an apartment in the building he received assurances from the management company and the garage security guards that his expensive car collection would be safe in the garage.
On September 22, 1980 plaintiff returned home from work to find that the radio from his Jaguar was missing. The vehicle which had not been used for several weeks was *413 a convertible which was left unlocked. Thus, although the keys were not delivered to the defendant, they would not have been needed to remove the radio. Plaintiff immediately reported the loss to the garage security people and subsequently commenced this action to recover the value of the radio, which he proved by the original purchase bill.
Defendant denies its liability, citing clause 9(b) of the lease which precludes liability for personal or property damage, and clause 10 which states: “Landlord is not required to be a custodian for said automobile or its contents, and in no event is the landlord liable for any theft or pilferage, or damage resulting therefrom.”
THE RELATIONSHIP
The crucial question before this court is what standard of care is owed by the landlord of an apartment house garage to a tenant who parks his car in an assigned space in the garage, but does not turn over his keys to the garage security guards.
Unfortunately, the law on parking garage owner liability is confused. The traditional common-law approach is the bailment-license-lease distinction, as set forth by the Court of Appeals in Osborn v Cline (263 NY 434). In that case the plaintiff parked her car in an open-air parking lot operated by defendant. The Trial Judge had charged the jury that as a matter of law there existed a bailor-bailee relationship. The Court of Appeals reversed, stating that whether a person simply pays for a place to put his car (license) or turns it over to the possession of the parking lot attendant (bailment) is a question for the jury to be determined by the place, conditions and nature of the transaction.
Recently the Court of Appeals has rejected categorical distinctions in a series of cases concerning the liability of a landowner to persons injured upon his property. (Basso v Miller, 40 NY2d 233; Scurti v City of New York, 40 NY2d 433.) In Basso, the court noted the difficulty of deciding cases based upon attempts to fit a plaintiff into (p 240) “one of the three rigid categories” (invitee, licensee or trespasser). The court (p 240) went on to quote from the United States Supreme Court decision in Kermarec v Compagnie *414 Generale (358 US 625, 630-631) where it was said: “The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards ‘imposing on owners and occupiers a single duty of reasonable care in all the circumstances.’ ”
Our Court of Appeals then announced a new policy for the State to be a (p 241) “single standard of reasonable care under the circumstances whereby foreseeability shall be a measure of liability.”
In a rather exhaustive opinion, the court in Garlock v Multiple Parking Servs. (103 Misc 2d 943), after discussing the various often-conflicting opinions in garage damage cases and the difficulty in the determination as to whether a license or a bailment is involved, concluded that it need not decide that issue, but instead would follow the aforesaid rule adopted in Basso. In rejecting the “bailmentlicense” basis for decision, the court pointed out that the result of cases decided on that rationale has been that the “easier the operator makes it for the auto to be stolen or vandalized, the less likely he is going to be held liable.” (Garlock v Multiple Parking Servs., supra, p 951.) This is because the less control exercised by the operator and the less security provided, the more likely a license and its lower standard of care is to be found.
This court would like to follow the modern rule made applicable to landowners in Basso to this type of case. However, as far as the First Department is concerned, *415 language from a recent case would seem to indicate that in garage cases, the bailment-license-lease distinction remains.
In Motors Ins. Corp. v American Garages (98 Misc 2d 887), the plaintiff’s car was stolen from an indoor garage. The keys were in possession of the defendant hung on a pegboard in the garage office. The contract under which the vehicle was garaged referred to the relationship as “landlord and tenant”. The court set out the general rules governing garage cases as follows (p 889): “The ordinary relationship between a customer and a garage owner is that of bailor and bailee and certain legal rights and liabilities mark that relationship *** The burden is always on the customer to prove lack of due care in safeguarding his vehicle in order to recover for its loss. However, upon a mere showing that he delivered the vehicle to the bailee and the failure or refusal of the bailee to return it, the burden of going forward with the evidence shifts to the bailee. If he then shows a reasonable explanation for the failure to return (e.g., as by the intervention of a criminal agency), the customer, to recover, must now show that the negligence of the bailee brought about that occurrence *** But not every parking arrangement gives rise to a bailor-bailee status. The key words are dominion and control by the bailee. Thus in the so-called Airport parking cases, the parker is merely renting space; he is a type of temporary licensee. The mere failure to return his car to him, absent proof of negligence, gives rise to no presumption in his favor”.
In discussing the garage owner’s position that the relationship was not a bailment but rather a lease arrangement, the Appellate Term cited approvingly from Langenthal v American Stuyvesant Garage (72 Misc 2d 189), where the parties contracted for a long-term lease of space which expressly negated a bailment. The court, finding that a landlord-tenant relationship existed, and that therefore “the presumption of negligence that loss in the context of a bailor-bailee relationship might otherwise impose” was extinguished, gave judgment for the garage owner because of the plaintiff’s failure to prove any negligence. (Langenthal v American Stuyvesant Garage, supra, p 190.)
*416 In Motors Ins. Corp., the Appellate Term upheld the trial court in a finding of negligence from the fact that the keys to the car which was stolen were left in open view in an unlocked and unattended office. Having found negligence without relying on a presumption, it was unnecessary for the court to specifically make a finding on the nature of the relationship.
Another case of interest is Rudolph v Riverdale Mgt. (202 Misc 586) where plaintiff was assigned a specific space to park, had his own keys to the garage, always parked the car himself and did not turn the keys over to anyone. The court there held that relationship was landlord-tenant, as it purported to be by the terms of the lease.
In the case at bar, based on the contract defining the relationship, the fact that the keys were never turned over to defendant, and that the defendant never moved the car (which was rarely used by the plaintiff), the court finds that a landlord-tenant relationship existed.
THE DISCLAIMER
Having determined the relationship, the court finds that the exculpatory language in the lease to be unenforceable as contrary to public policy under section 5-321 of the General Obligations Law (dealing with the landlord-tenant relationship) and section 5-325 (dealing with garages). (See Langenthal v American Stuyvesant Garage, supra; Motors Ins. Corp. v American Garages, supra.)
CONCLUSION
Thus, having removed the exculpatory language as a defense, plaintiff may recover if, and only if, he establishes negligence on the part of garage owner. In this connection, claimant has acknowledged that there were two security guards on duty and that the defendant’s security system was operable at the time of the radio’s disappearance. The standard of care does not require that defendant be an insurer of claimant’s property (Rudolph v Riverdale Mgt., supra) but merely that defendant not be negligent in caring for such. Since no proof of negligence at all has been offered, judgment may be entered for defendant dismissing the complaint, without costs.