Uydene M. AMDAHL and Roger D. Amdahl, as Guardians Ad Litem for Darin D. Amdahl, A Minor, Plaintiffs and Appellants,

v.

Jennifer R. SARGES, Defendant and Appellee.

No. 15291.

Supreme Court of South Dakota.

Considered on Briefs Nov. 20, 1986.

Decided May 6, 1987.

Carleton R. Hoy of Davenport, Evans, Hurwitz & Smith, and James L. Hoy, Staff Atty. of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiffs and appellants.

Timothy J. Nimick of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for defendant and appellee.

WUEST, Chief Justice.

This is an appeal by plaintiffs Uydene and Roger Amdahl from a judgment entered in favor of the defendant, Jennifer R. Sarges, in this negligence case. We affirm.

This case arises out of an automobile accident which occurred on November 8, 1983. Amdahls' son Darin, a high school junior, was driving home on Highway 11 near Brandon, South Dakota. According to Darin, a car driven by defendant turned left in front of him, forcing him to hit the brakes; he then slid on some gravel and hit a parked car. Defendant and her passenger testified that defendant did not cut in front of Darin, but rather, Darin's car hit some gravel and spun out, causing the accident. Defendant did not have a driver's license at the time of the accident.

Prior to trial, defendant made a motion in limine to exclude evidence that she did not have a driver's license. The trial court ruled that such evidence was relevant on the issue of the experience or inexperience of defendant, but that the evidence was substantially more prejudicial than probative and therefore inadmissible under SDCL 19–12–3 (Rule 403).* The trial court did, however, allow testimony regarding defendant's lack of driving experience. The jury returned a verdict for defendant and Amdahls appealed.

The sole issue on appeal is whether the trial court abused its discretion by excluding the evidence of defendant's lack of a driver's license. Amdahls argue that defendant's failure to have a driver's license is causally connected to the alleged negli-

gence and, therefore, it was prejudicial error to exclude the evidence.

■ A trial court's evidentiary rulings are presumptively correct; this court has no duty to seek reasons to reverse. In reviewing the trial court's ruling, we must determine whether the trial court abused its discretion. *Shamburger v. Behrens*, 380 N.W.2d 659 (S.D.1986). The trial court may exclude evidence under SDCL 19–12–3 if the evidence, as admitted, would provide the jury with an undue tendency to decide the case on an improper basis. *Id.*

This court has never dealt with the precise issue raised in this appeal. Nevertheless, Amdahls rely heavily upon our decision in *Arbach v. Gruba*, 89 S.D. 322,330, 232 N.W.2d 842, 846 (1975), in which we stated that violation of a safety statute, unless justified or excused, is negligence per se. Amdahls' reliance on this case is misplaced. *Arbach* was a negligent entrustment case, with the primary question being the sufficiency of the evidence of defendant's negligence; tangentially, we discussed whether it is negligence per se to allow an unlicensed driver (and possibly intoxicated driver) to operate one's automobile. Consequently, *Arbach* is not controlling in the present case.

■ Furthermore, the overwhelming weight of authority is to the effect that mere lack of a driver's license is not evidence of negligence in the operation of a motor vehicle. Annot., 29 A.L.R.2d 963 (1953) and cases cited therein. The Minnesota Supreme Court has stated on several occasions that driving without a license is irrelevant and immaterial to the issue of negligence. *Jones v. Fleischhacker*, 325 N.W.2d 633 (Minn.1982); *Kronzer v. First Nat'l Bank of Minneapolis*, 305 Minn. 415, 235 N.W.2d 187 (1975); *Knutson v. Nielsen*, 256 Minn. 506, 99 N.W.2d 215 (1959). And the Indiana Supreme Court, in a frequently cited case, has held that negligence cannot be predicated upon the mere fact of

---

* SDCL 19–12–3 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or mis-

leading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

minority or lack of an operator's license. *Opple v. Ray*, 208 Ind. 450, 195 N.E. 81 (1935).

We are persuaded that the majority rule on this issue is the correct rule. Therefore, we conclude that the trial court did not abuse its discretion in excluding the evidence in question.

The judgment of the trial court is affirmed.

MORGAN, J., and FOSHEIM, Retired Justice, concur.

HENDERSON, J., concurs specially.

SABERS, J., dissents.

MILLER, J., not having been a member of the court at the time this action was submitted to the court, did not participate.

HENDERSON, Justice (specially concurring).

This was a noncontact accident where no physical evidence existed to either confirm or refute the respective litigant's version of the facts. All of the events transpired "in the country" and not "in the city." The only witnesses were the parties and appellee's passenger. The jury did not return a unanimous verdict but did return a verdict in favor of appellee after resolving a tremendous conflict in the evidence and obviously weighing the credibility of the witnesses' statements, under oath, concerning how this accident happened.

Believing that the evidence of a lack of license was evidence which was substantially more prejudicial than probative, the trial court saw fit to exclude any evidence on a lack of driving license.[1] We are confronted with an issue of simple abuse of discretion. Was there abuse of discretion or not? It appears the trial court feared prejudicing the jury against the party who did not have a driver's license. Rather, the trial court believed the case should be decided upon negligence rather than a violation of a failure to obtain a driver's license.[2] Although prohibiting appellant from inquiring into appellee's failure to have a valid driver's license at the time of accident, the trial court ruled that appellant could legitimately probe and cover, by way of examination, the driving experience of appellee. Throughout the trial, from the opening statement through the examination of appellee, the driving experience of appellee was thoroughly canvassed. In fact, the jury heard evidence that appellee had driven the car in question only in the driveway and had never operated the car other than in the driveway. Further, examination revealed appellee had driven on a gravel road only when accompanied by her parents. That appellee had taken a course in driver's education but did not complete the last two classes, was further evidence brought before the jury to enable the jury to learn of appellee's experience and education in driving. All of this is mentioned in order to reflect that the trial court was not trying to cut appellant's case short of probative evidence—evidence directly going to the question of driving competence.

Surely, a violation of a driver's license law, *per se*, should not be evidence, *per se*, of negligence. There simply has to be some causal connection between the viola-

1. As the majority opinion points out, the longstanding majority rule states "the mere lack of a driver's license is immaterial and incompetent in determining whether at the time of the accident the operator was guilty of negligence in the operation of the motor vehicle." 8 Am.Jur.2d *Automobiles and Highway Traffic* § 1023, at 184 (1980). *See Dance v. Town of Southampton*, 95 A.D.2d 442, 467 N.Y.S.2d 203 (1983); *Mills v. Park*, 67 Wash.2d 717, 409 P.2d 646 (1966); *Mattero v. Silverman*, 71 N.J.Super. 1, 176 A.2d 270 (1961); W. Keeton, *Prosser and Keeton on the Law of Torts* § 36, at 226 (5th ed. 1984); 3 S. Speiser, C. Krause & A. Gans, *The American Law of Torts* § 12:63, at 680 (1986); 4 T. Shearman & A. Redfield, *A Treatise on the Law of Negligence* § 685, at 1622–23 (rev. ed. C. Zipp 1941).

2. Prosser notes "[m]ost licensing statutes, such as those applicable to automobile drivers ... have been construed as intended only for the protection of the public against injury at the hands of incompetents, and to create no liability where the actor is in fact competent but unlicensed." Keeton, *supra* § 36, at 226 (footnotes omitted).

tion and injury.[3] First, the trial court should, as a matter and determination of law, determine whether the violation is relevant; and, secondly, the trial court should determine if the violation is the proximate cause of any damage or injury, the latter being a finding of fact for the jury.[4] Here, the trial court made a determination, as a matter of law, that the violation was not relevant; yet, the trial court was abundantly fair in permitting evidence to go to the jury concerning the skills of the driver who did not have a license. It was thoroughly developed that appellee was an inexperienced driver and had failed to complete her driver's education. Notwithstanding, the jury held in her favor in this noncontact, country-road accident involving young people at the wheel.

SABERS, Justice (dissenting).

In *Arbach v. Gruba,* 89 S.D. 322, 232 N.W.2d 842 (1975), the South Dakota Supreme Court stated:

It is settled law in this state that the violation of a safety statute, unless justified or excused, is negligence *per se.*

*Id.,* 89 S.D. at 330, 232 N.W.2d at 846, *citing Alley v. Siepman,* 87 S.D. 670, 214 N.W.2d 7 (1974); *Bothern v. Peterson,* 83 S.D. 84, 155 N.W.2d 308 (1967).

*Arbach* was a negligent entrustment case that dealt with the violation of a safety statute which prohibited allowing an un-

licensed person to operate one's automobile, as follows:

SDCL 32–12–72. **Allowing unauthorized person to use vehicle.** No person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this chapter or in violation of any of the provisions of this chapter. A violation of this section is a Class 2 misdemeanor.

The present case deals with the violation of a safety statute prohibiting a person against driving without a license, as follows:

SDCL 32–12–22. **Prohibition against driving without license—Misdemeanor.** No person, ... shall drive any motor vehicle upon a highway in this state unless such person has a valid license as an operator under the provisions of this chapter. Any person convicted for a violation of this section shall be guilty of a Class 2 misdemeanor.

If it is negligence per se to allow an unlicensed driver to drive a car why isn't it negligence per se for an unlicensed driver to drive?

Even if not negligence per se, driving without a license is certainly pertinent evidence of negligence and relevant and admissible in respect to competence and experience.

---

**3.** If the opposite were true, and negligence *per se* is blindly applied whenever a law is violated, defendants will be adjudged negligent even in situations where they may not be at fault. Such a result is untenable. *See* Morris, *The Relation of Criminal Statutes to Tort Liability,* 46 Harv.L. Rev. 453, 458 (1932). Moreover, a licensing statute is not a safety statute.

It does not specify the standard or correct way to do anything; while driving without a license does not signify in any conceivable way that at the time in question such driving did not come up to the approved standard in any respect. This is true because a licensing statute does not stipulate what standard conduct on the road should be, so that breach of the licensing statute (i.e., not having a license) is tantamount to not having observed the statutory standard of conduct in driving. An unlicensed driver may be a superb driver; and whether he is or not, he may have driven with due care on the occasion in question.

Certainly his not having a license at the time is hardly probative of his not having done so. Gregory, *Breach of Criminal Licensing Statutes in Civil Litigation,* 36 Cornell L.Rev. 622, 634–35 (1951).

**4.** Even those cases in which lack of an operator's license was held relevant, some causal connection must appear between the statutory violation and the accident. *See, e.g., Klanseck v. Anderson Sales & Serv., Inc.,* 426 Mich. 78, 393 N.W.2d 356 (1986); *Brackin v. Boles,* 452 So.2d 540 (Fla. 1984). As the Supreme Court of Michigan recently wrote: "Relevancy is usually inherently established when the traffic regulation which was violated concerns the manner in which an automobile was operated. *Relevancy is not so easily established when the traffic regulation which was violated concerns a licensing requirement."* *Klanseck,* 426 Mich. at 88, 393 N.W.2d at 360 (emphasis added) (quoting *Brackin,* 452 So.2d at 545).

As stated by 4 F. Harper, *The Law of Torts* § 20.2 (2d ed. 1986):

> Where the car is entrusted to an unlicensed driver, or where defendant himself drives it without a license, a similar question is presented ... did the harm result from the want of a license, or (more accurately) because of the risk of unskilled driving that the licensing statute sought to prevent? If the car was driven with all the skill and care the law requires, then the harm did not proceed from such a risk; if the car was negligently driven, then it did. The further question then arises: May the want of license be considered as *some* evidence that unskillfulness contributed to the accident? Some courts say no. But this effectively deprives the victim of any benefit, in a civil case, of a statute concededly passed in part for his protection. Nor does the ruling seem theoretically sound. The legislature has decided that the general safety requires the activity in question to be limited to those who can demonstrate *at least a minimum of special skill.* It is fair to assume that the unlicensed as a class are far less likely than those licensed to have the skill for which a license is required. And it is certainly true that when the unskilled attempt what it takes skill to do, some of the intangible factors that go to make up lack of skill are far more likely than not to have contributed to any mishap that occurs. Frequently they do this in ways that are hard to prove; moreover, what evidence there is in the matter is likely to be in the defendant's hands. Both probability and policy, therefore, call for the rule that breach of a licensing statute, if it is negligence to the plaintiff at all, should be prima facie evidence that it is the 'proximate cause' of any injury that ensues. (emphasis added)

*Id.*, at 112–113.

The trial court recognized the importance and relevancy of this evidence and tried to minimize the damaging effect of its decision by allowing the plaintiff to inquire as to competency and experience. It seems to me that's like letting the plaintiff into the ring with one arm tied behind his back. Plaintiff should have been allowed to tell the jury that this young defendant was driving on the highways of this state even though she had not cared enough to obtain a driver's license.

A review of SDCL ch. 19–12 on relevancy of evidence favors admissibility of the absence of a driver's license. SDCL 19–12–1 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of a consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19–12–2 states in part that "all relevant evidence is admissible, except as otherwise provided by Constitution or statute...." SDCL 19–12–3 provides that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." There is no showing in this case that the probative value of this relevant evidence was *substantially* outweighed by the danger of unfair prejudice.

> " '[P]rejudice' does not mean the damage to the opponent's case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means."

*State v. Iron Shell*, 336 N.W.2d 372, 375 (S.D.1983), *quoting* 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5215 at 274–275 (1978). Here, this evidence may have prejudiced the defendant, but not unfairly; only *unfair* prejudice is excluded under SDCL 19–12–3.

The arguments advanced by the defendant to exclude this evidence are arguments more properly made to the jury rather than to the court. The effect of the "majority rule" advanced by the majority opinion is harmful to the administration of justice in the long-term because it shows inherent distrust for the jury and prevents them from knowing the full truth. In the short-

term, it prevented the plaintiff from having a fair civil trial.

Accordingly, I dissent.