2005 SD 89

**STATE AUTO INSURANCE COMPANIES, Plaintiff and Appellant,**

v.

**B.N.C. a/k/a B.D., Defendant,**

and

**Audrey Ault, f/k/a Audrey Duggan, Defendant and Appellee.**

No. 23447.

Supreme Court of South Dakota.

Argued on April 27, 2005.

Decided July 27, 2005.

Mitchell Peterson of Davenport, Evans, Hurwitz & Smith, LLP, Sioux Falls, South Dakota, Attorneys for plaintiff and appellant.

Mark J. Arndt of May & Johnson, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

ZINTER, Justice.

[¶ 1.] State Auto insured a vehicle that, while being operated by an unauthorized driver, was involved in a single car accident rendering it a total loss. After paying its insured/owner for the property loss, State Auto brought this subrogation claim against the mother of the minor who was driving the vehicle. State Auto claimed that the mother was responsible on a theory of vicarious liability and on three theories of direct negligence. The trial court rejected all claims and granted summary judgment in favor of mother. We affirm the dismissal of all claims except one asserting direct negligence. Because material issues of disputed fact exist on the claim asserting negligence in the performance of a gratuitous undertaking, we reverse and remand on that issue.

**Facts and Procedural History**

[¶ 2.] State Auto insured a Chevrolet Suburban owned by William Close. Close is the grandfather of the driver, B.D., and the father of B.D.'s mother, Audrey Ault. Ault is B.D.'s custodial parent. B.D. was 14 years-old at the time she was driving Close's car and had the accident.

[¶ 3.] The events leading up to this incident began when Ault stopped by Close's home to water his plants, let the cat in, and check the home while he was out of

town on vacation. Ault entered the home using the key. Later that day, without Ault's knowledge, B.D. and a friend went to Close's home to go swimming in the back yard (Close's home was apparently on a lake.) Sometime after arriving, B.D. also entered the home. State Auto alleges that B.D. entered the home through the back patio door that Ault had mistakenly left unlocked on her earlier visit. Although there is some dispute about the actual method of entry, we accept State Auto's version of the facts and assume that B.D. entered her grandfather's home through the door Ault had mistakenly left unlocked.

[¶ 4.] Sometime after entering the home, B.D. decided to go "to town" to pick up another friend to go swimming. Close's suburban was in the garage and B.D. knew that her grandparents kept the keys in the vehicle. Although she had no driver's license and did not have permission to drive the car, B.D. took[1] the vehicle without incident. However, while returning to Close's home, B.D. lost control of the vehicle on a gravel road and it rolled. The suburban was a total loss.

[¶ 5.] State Auto paid Close $30,708 for the property damage to the vehicle. State Auto then brought this subrogation action against Ault and B.D. to recover the insurance benefits it had paid. The trial court granted summary judgment in favor of Ault on all theories.[2] It concluded that Ault was not vicariously liable for her daughter. It also concluded that State Auto's three direct negligence claims were barred because Ault owed no duty to Close. State Auto appeals, questioning:

(1) Whether Ault was vicariously liable for the damages caused by her daughter under the parental liability statute, SDCL 25–5–15.

On its direct negligence claims, State Auto questions;

(2) Whether Ault had a duty to keep Close's home secured;

(3) Whether Ault had a duty to not encourage her daughter to drive; and,

(4) Whether Ault had a duty to better supervise her daughter.

### Decision

[¶ 6.] Summary judgment is permitted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15–6–56(c). We view the evidence most favorably to the nonmoving party and resolve all reasonable doubts against the moving party. *Thornton v. City of Rapid City*, 2005 SD 15, ¶ 4, 692 N.W.2d 525, 528. However:

[w]hen a motion for summary judgment is made and supported as provided in § 15–6–56, an adverse party may not rest upon the mere allegations or denials of his pleading, but [its] response, by affidavits or as otherwise provided in § 15–6–56, must set forth specific facts showing that there is a genuine issue for trial. If [the adverse party] does not so respond, summary judgment, if appropriate, shall be entered. . . .

---

1. State Auto contends that B.D. "stole" the vehicle from Close's garage. For purposes of this case, it is immaterial whether the vehicle was "stolen or borrowed." There is no dispute that B.D. took her grandfather's vehicle without permission.

2. The trial court dismissed all claims against Ault, but did not dismiss the claims against B.D. The trial court certified its judgment as a final order pursuant to SDCL 15–6–54(b). Neither party has contested the certification.

SDCL 15–6–56(e). Because Ault's motion was properly supported, State Auto, as the adverse party, must have designated specific facts that revealed a genuine issue for trial. *U.S. Bank Nat'l Ass'n v. Scott*, 2003 SD 149, ¶ 39, 673 N.W.2d 646, 657. "[M]ere general allegations and denials which [did] not set forth specific facts will not prevent the issuance of a judgment." *Casazza v. State*, 2000 SD 120, ¶ 16, 616 N.W.2d 872, 876 (citations omitted).

### Vicarious Liability

■ [¶ 7.] State Auto contends that Ault is vicariously liable for the damages caused by her daughter. Generally, parents are not vicariously liable for the acts of their children. SDCL 25–5–14.[3] However, SDCL 25–5–15 provides a limited exception for malicious and willful acts:

> Any person, firm, association, private or public corporation, including the State of South Dakota and its political subdivisions, suffering damages to real, personal, or mixed property, or personal injury, through the malicious and willful act or acts of a minor child or children under the age of eighteen years while residing with their parents, shall have therefor a cause of action against and recover of the parents of such child or children. In each case the amount of recovery against one or both of the parents shall be limited to actual damages of fifteen hundred dollars and the taxable court costs, *and does not apply to damages proximately caused through the operation of a motor vehicle by the minor child* or children. If the issue is disputed, any determination that a parent is not responsible for the full amount of actual damages and costs authorized by this section shall be justified in a specific finding, in writing or on the record.

(Emphasis added). This case presents two issues under this statute: (1) whether the property damage was suffered "through the malicious and willful acts" of B.D. and (2) whether the second modifying clause in the second sentence of SDCL 25–5–15 (emphasized above) eliminates vicarious liability for a child's operation of a motor vehicle.

### (1) *Willful and Malicious Acts*

[¶ 8.] State Auto argues that SDCL 25–5–15 "imposes strict liability upon parents when the requirements of the statute ... are met." State Auto asserts that the statutory requirements were met because it "suffered damages through the 'malicious and willful' acts of B.D." in *taking* the vehicle. Ault disagrees by focusing on B.D.'s *operation* of the vehicle. Ault contends that B.D. was merely negligent in causing the accident. Ault argues that because ordinary negligence was the proximate cause of the accident, the malicious and willful element of the vicarious liability statute is absent.

■ [¶ 9.] There is no dispute that State Auto must establish that the damages were suffered *through* a malicious and willful act. This statutory requirement is one of causation. It requires that the person seeking recovery establish that the damages were proximately caused by a malicious and willful act of a child.

[¶ 10.] The term malicious is generally defined as an act that is "[s]ubstantially certain to cause injury[;] ... [w]ithout just cause or excuse." Black's Law Dictionary (8th ed 2004). We have defined malicious as "having, or done with, wicked, evil or

---

**3.** SDCL 25–5–14 provides:

Except as provided by § 25–5–15, neither parent nor child is answerable as such, for the act of the other.

mischievous intentions or motives; wrongful and done intentionally without just cause or excuse or as a result of ill will." *State v. McGill*, 536 N.W.2d 89, 94 (S.D. 1995) (citation omitted). Willful conduct involves a lower level of mens rea generally defined as an act that is "[v]oluntary and intentional, but not necessarily malicious." Black's Law Dictionary (8th ed 2004).

■ [¶ 11.] Recognizing that loss of control of the vehicle was not malicious and willful, State Auto focuses on B.D.'s taking of the vehicle. State Auto alleges that the taking was "willful" in that her state of mind "was more than merely negligent." However, we need not consider this argument because even if the taking of the vehicle was a willful act, the statute requires more than mere willfulness. SDCL 25–5–15 requires that the child's act be "malicious *and* willful." But here, State Auto has not identified any fact in the summary judgment record suggesting that B.D. took her grandfather's vehicle maliciously.

[¶ 12.] It is important to note that the factual record for this summary judgment consisted of statements of material facts submitted by both parties. These statements reflect that B.D., while at her grandparent's home to swim, entered the house and took the suburban. With respect to B.D.'s mens rea in taking the vehicle, State Auto's statement of material facts reflects only that "[w]hile in the Close's home, B.D. decided that she needed to drive into town to pick up a friend to go swimming." The statements also reflect that thereafter, while driving, B.D. encountered loose gravel on the road, was unable to control the vehicle, and rolled it a number of times. Although these statements do not reflect that B.D. had permission to take or operate the vehicle, there is no fact suggesting that any part of B.D.'s

conduct at her grandfather's home was malicious. Rather, the evidence merely indicates that, while on her grandfather's premises to swim, B.D. took his vehicle without permission to pick up a friend and, thereafter, negligently lost control of the vehicle.

[¶ 13.] We reiterate that State Auto was obligated to identify "specific facts showing that there is a genuine issue for trial." *See U.S. Bank*, 2003 SD 149, ¶ 39, 673 N.W.2d at 657 (citations omitted). However, the statements of material fact do not identify anything from which the trial court could have found or inferred that the taking of B.D.'s grandfather's vehicle was malicious; i.e. "[s]ubstantially certain to cause injury [w]ithout just cause or excuse ... [;] ... having, or done with, wicked, evil or mischievous intentions or motives; [or] wrongful and done intentionally without just cause or excuse or as a result of ill will." *See supra* ¶ 10. Therefore, even assuming that the taking of the vehicle was willful, State Auto has not met its burden of identifying any fact suggesting that the damages were suffered through malice.

### (2) *Vicarious Liability For a Child's Operation of a Motor Vehicle*

■ [¶ 14.] Even assuming that there was a genuine issue of material fact regarding malice, Ault contends that State Auto cannot recover because the vicarious liability statute does not apply to damages resulting from a child's operation of a motor vehicle. This requires us to construe the statute, which we do de novo. *Doe v. Quiring*, 2004 SD 101, ¶ 8, 686 N.W.2d 918, 920 (citation omitted).

[¶ 15.] The first sentence of SDCL 25–5–15 imposes vicarious liability for the malicious and willful acts of children. However, the second sentence contains two modifying clauses. The first modifying clause limits recovery "to actual damages of fifteen hundred dollars and the taxable court

costs...." *Id.* Immediately thereafter, a second modifying clause provides "and does not apply to damages proximately caused through the operation of a motor vehicle by the minor child or children." *Id.*

[¶ 16.] The parties disagree as to what part of the statute this second clause modifies. Ault contends that both clauses modify the subject of the second sentence, which is the vicarious liability "recovery." Under Ault's construction, "recovery" would be generally limited to $1500 by the first clause, and under the second clause, no "recovery" would be permitted for damages caused through a child's operation of a motor vehicle. On the other hand, State Auto contends that the second clause only limits the preceding modifying clause (the liability limit of $1500). Therefore, State Auto contends that the second clause only eliminates the $1500 liability limit in auto cases and does not eliminate vicarious liability altogether.

■ [¶ 17.] To support its argument, State Auto relies upon the doctrine of the last antecedent.

It is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation.

*Estate of Fisher v. Fisher,* 2002 SD 62, ¶ 13, 645 N.W.2d 841, 845 (citation omitted). This rule does not apply if "there is something in the subject matter or dominant purpose [of the statute,] which requires a different interpretation." *Nat'l Farmers Union Prop. and Cas. Co. v. Universal Underwriters Ins. Co.,* 534 N.W.2d 63, 65 (S.D.1995) (citations omitted). Here, the parties have different views on the subject matter and dominant purpose of the statute. Each party's view tends to support their different interpretations of the statute.[4] After reviewing these conflicting purposes, we cannot say whether either was the dominant or clear purpose of the legislature.

■ [¶ 18.] Moreover, in performing statutory interpretation, we have often stated that use of construction aids is not appropriate when the meaning of the statute is clear:

---

4. Ault asserts that the "logical conclusion [is] that the legislature intended to exempt parents from liability for damages caused by their children's motor vehicle accidents."

State Auto responds that holding parents responsible for the actions of their children is consistent with South Dakota's uninsured and underinsured motorist statutes in that the risk of injuries should not fall on innocent third parties. However, the Legislature could not have had the uninsured and underinsured statutes in mind because they were not adopted until 1966 and 1975, while the vicarious liability statute was enacted in 1957. Furthermore, we observe that SDCL 25–5–15 is intended to allow third parties to recover from the *parents* of minor children, while the uninsured and underinsured motorist statutes allow an accident victim to recover from their own insurance company. Therefore, the uninsured/underinsured motorist statutes do not reveal the intent or purpose of SDCL 25–5–15.

State Auto also cites several cases in which a parent's insurance company has provided vicarious liability coverage for a child's malicious acts. State Auto argues that because insurance coverage is available for the malicious and willful acts of children, SDCL 25–5–15 should be interpreted to permit third parties to recover when a child is driving an automobile. However, the majority of State Auto's cases involved a parent's homeowner's, not auto, insurance. Furthermore, there is no evidence in this record suggesting that the Legislature intended to impose vicarious liability because parents could obtain auto or homeowner's insurance that covers malicious and willful acts of children.

Statutory construction is an exercise to determine legislative intent. In analyzing statutory language we adhere to two primary rules of statutory construction. The first rule is that the language expressed in the statute is the paramount consideration. The second rule is that if the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction. When we must, however, resort to statutory construction, the intent of the legislature is derived from the plain, ordinary and popular meaning of statutory language.

*State v. Johnson*, 2004 SD 135, ¶ 5, 691 N.W.2d 319, 321–22 (citation omitted). In this case, we can ascertain the plain meaning and effect of the language without extrinsic aids. Therefore, we do not resort to the doctrine of the last antecedent to determine the statute's meaning.

[¶ 19.] The meaning of the second sentence is clear. It contains one subject that is modified by two clauses:

In each case *the amount of recovery* against one or both of the parents shall be *limited to actual damages of fifteen hundred dollars* and the taxable court costs, *and does not apply to damages proximately caused through the operation of a motor vehicle by the minor child or children.*

SDCL 25-5-15. (Emphasis added.) This emphasized language reflects that the subject of the sentence is "recovery," and the two modifying clauses are: "shall be limited to actual damages of fifteen hundred dollars ..." and "does not apply to damages proximately caused through the operation of a motor vehicle." Significantly, the word separating the two modifying clauses is the conjunction "and." As such, it joins two equal clauses. Because the two clauses are joined conjunctively, both clauses modify the subject of the sentence, which is "recovery." Therefore, the plain meaning of SDCL 25-5-15 is that vicarious liability "recovery" is "limited to" $1500 plus costs, and the "recovery" does not apply when the damages were caused by a child's operation of a motor vehicle. We therefore hold that Ault was not vicariously liable for the property damage caused by B.D. even if her conduct was malicious and willful.

### *Direct Negligence—Did Ault Owe Any Duty to Close?*

[¶ 20.] There are three requirements in a negligence claim: "(1) a duty on the part of the defendant; (2) a failure to perform that duty; and (3) an injury to the plaintiff resulting from such a failure." *Kuehl v. Horner (J.W.) Lumber Co.*, 2004 SD 48, ¶ 10, 678 N.W.2d 809, 812 (citation omitted). The existence of a duty is a question of law that is reviewed de novo. *Bland v. Davison County*, 507 N.W.2d 80, 81 (S.D.1993) (citation omitted). While negligence actions are not generally suitable for summary judgment, it is appropriate when the duty question is resolved in favor of the defendant. *See id.* Because this case was decided on summary judgment, we look at the facts in the light most favorable to the non-moving party and give that party "the benefit of all reasonable inferences." *Kuehl*, 2004 SD 48, ¶ 16, 678 N.W.2d at 813 (citation omitted).

### *Duty to Keep a Home Secured in a Gratuitous Undertaking*

[¶ 21.] State Auto contends that Ault, after watering Close's plants, letting the cat in, and checking his home, owed him a duty to re-secure the home upon leaving. State Auto argues this duty arose out of their relationship in which Ault was apparently watching and taking care of Close's

home. State Auto further argues that Ault had a duty to keep the home secured because it was foreseeable that if she did not keep the home locked, an unauthorized person could enter and cause harm to the home or its contents.

■■■■ [¶ 22.] "Generally, the law imposes no duty to prevent the misconduct of a third person." *Walther v. KPKA Meadowlands Ltd. Partnership*, 1998 SD 78, ¶ 17, 581 N.W.2d 527, 531 (citing *Gleason v. Peters*, 1997 SD 102, ¶ 8, 568 N.W.2d 482, 484; *Tipton v. Town of Tabor*, 1997 SD 96, ¶ 12, 567 N.W.2d 351, 357 (*Tipton II*)). However, "[a] duty can be created by ... common law." *Walther*, 1998 SD 78, ¶ 38, 581 N.W.2d at 535 (citing *Poelstra v. Basin Elec. Power Coop.*, 1996 SD 36, ¶ 11, 545 N.W.2d 823, 826). There are "two essential elements required in the imposition of a duty to protect against" the misconduct of a third person: (1) the existence of a special relationship between the parties and (2) a finding that wrongful activity is foreseeable. *Small v. McKennan Hosp.*, 437 N.W.2d 194, 199 (S.D.1989) (citing Restatement (Second) of Torts § 344 (1965)). *See also Walther*, 1998 SD 78, ¶ 41, 581 N.W.2d at 535.

### 1. Special relationship

■■■■ [¶ 23.] "On the whole, we recognize no general duty to protect one's fellow human beings.... If a duty exists for such protection, it must originate from some special relationship imposing an obligation to protect another ... based on a position of dependence intrinsic to the relationship." Smith *ex rel. Ross v. Lagow Const. & Developing Co.*, 2002 SD 37, ¶ 12, 642 N.W.2d 187, 190–91 (citing Restatement (Second) of Torts § 314A (1965)). However, the Restatement (Second) of Torts

§ 323 (1965), also restates the common-law gratuitous undertaking rule that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.[5]

*Gregor v. Cady*, 82 Me. 131, 19 A. 108, 108 (1889), more specifically explained this common law duty:

> while it is generally true with respect to gratuitous contracts, that for nonfeasance no action lies, still for misfeasance an action on the case may be maintained, inasmuch as "the confidence induced by undertaking any service for another is a sufficient legal consideration to create a duty in the performance of it." ... If a party makes a gratuitous engagement, and actually enters upon the execution of the business, and does it amiss, through the want of due care, by which damage ensues to the other party, an action will lie for this misfeasance.

(Citations omitted). The court in *Kline v. 1500 Massachusetts Ave. Apartment Corp. et al.*, 439 F.2d 477, 483 (D.C.Cir.1970), explained the basis for the duty:

> [when] the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of the other, a duty should be imposed upon the one possessing con-

---

5. We have previously stated that while we are not bound by the Restatements of the Law, we have nonetheless "found its reasoning persua-

sive in many instances." *Chem–Age Industries, Inc. v. Glover*, 2002 SD 122, 133, 652 N.W.2d 756, 770.

trol (and thus the power to act) to take reasonable precautions to protect the other one from [acts] by third parties which, at least, could reasonably have been anticipated.

While Kline involved a landlord-tenant relationship, the court indicated that this theory of liability applied to other relationships. The *Kline* court explained that in these situations, the duty is imposed because only the party responsible is "in the position to take the necessary acts of protection required." *Id.* at 484. Accordingly, under the common law rule, duties have been found in various relationships where the actor engages in a gratuitous undertaking for a person who is harmed.[6]

[¶ 24.] We must then examine the Close–Ault relationship. Under the summary judgment standard of review, we must assume that Ault had a key to Close's home so that she could care for the cat, water his plants, and watch his home. These facts suggest that Ault had undertaken to watch and care for her father's home while he was on vacation. In performing that gratuitous undertaking, only Ault was in the position to take the neces-

sary measures to keep the home secured. Furthermore, the failure to exercise such reasonable care increased the risk of harm. Thus, when the facts are viewed in a light most favorable to State Auto, we conclude that the type of special relationship imposing a duty may have existed in this case.

### 2. Foreseeability

[¶ 25.] We also believe that it was foreseeable that failure to re-secure the home could result in harm to Close's property. Wrongful activity can be foreseeable upon common experience. *See Small,* 437 N.W.2d at 201 (citing *Dick v. Great South Bay Co.,* 106 Misc.2d 686, 435 N.Y.S.2d 240 (N.Y.CivCt 1981)). *See also Mullins v. Pine Manor College,* 389 Mass. 47, 449 N.E.2d 331 (1983); *Sally G. v. Orange Glen Estates Homeowners,* 227 Cal.Rptr. 559 (Cal.Ct.App.1986). We use the "totality of circumstances test" in evaluating foreseeability. *Small,* 437 N.W.2d at 201. Liability is not contingent upon foreseeability of the "extent of the harm or the manner in which it occurred." *Ward v. LaCreek Elec. Ass'n,* 83 S.D. 584, 588, 163 N.W.2d 344, 346 (citations omitted). This

---

**6.** For example, one who agreed to watch another's child "had a duty as a matter of law to exercise a reasonable degree of care in protecting [the child] from reasonably foreseeable harm." *Barfield By and Through Barfield v. Langley,* 432 So.2d 748, 749 (Fla.Dist. Ct.App.1983). In *Rogers v. Murch,* 253 Mass. 467, 149 N.E. 202, 203 (1925) an auto repair shop kept a vehicle inside the locked shop at night. Upon finding that the vehicle was stolen and that there was evidence that a window was left unlocked, the court concluded that a "jury could properly find that reasonable care and prudence required that the premises should have been more securely safeguarded by other or additional locks, or ... by a night watchman." In *Walsh v. Hackensack Water Co.,* 13 N.J. Misc. 815, 181 A. 422, 422–23 (1935), the defendant's employees were under no obligation to remove a meter because there was "neither privity of estate nor privity of contract between them."

However, it became its duty to perform that work, even if it was in the first instance not obliged to do so, in a reasonably careful manner "[f]or failure to do so liability is imposed upon them, not by reason of a duty arising from the contract, but upon the doctrine that one who undertakes to perform such work, even if done gratuitously, and does it negligently, whereby damage results, is liable for such negligence." In *Motors Ins. Corp. v. American Garages Inc.,* 94 Misc.2d 338, 404 N.Y.S.2d 803, 806 (N.Y.CivCt 1978), *judgment affirmed by Motors Ins. Corp. v. American Garages Inc.,* 98 Misc.2d 887, 414 N.Y.S.2d 841 (N.Y.AppDiv 1979), a garage attendant kept duplicate keys on a pegboard in an unlocked garage office. The court held that when a car was subsequently stolen and where the occurrence would not have taken place but for want of proper care, "then the responsibility for the loss incurred should be on the person responsible for such lack of care."

means that the exact harm need not be foreseeable. Rather, the harm need only be within the class of reasonably foreseeable hazards that the duty exists to prevent. *Sanchez v. State of New York*, 99 N.Y.2d 247, 252, 754 N.Y.S.2d 621, 624, 784 N.E.2d 675, 678 (2002). Therefore, we also conclude that it may have been reasonably foreseeable that the failure to keep Close's home locked would result in damage to Close's home or its contents.

[¶ 26.] Because the risk of harm was foreseeable, and because Ault may have engaged in a gratuitous undertaking, a duty may have arisen to exercise due care in providing those services if the failure to exercise reasonable care increased the risk of harm. We are not suggesting that the owner has a duty to third parties to lock their own home. We only conclude that on summary judgment review, a preferential view of these facts suggests that in undertaking to take care of Close's home, Ault may have owed Close a duty to keep the home secured under the gratuitous undertaking rule. Whether the requisite elements of that duty actually existed must await a remand to the trial court. Furthermore, whether Ault breached that duty and whether the breach was a proximate cause of State Auto's damages are questions for the jury. *See Laber v. Koch*, 383 N.W.2d 490, 493 (S.D.1986).

*Duty To Not Encourage Driving Without a License*

■■■ [¶ 27.] State Auto argues that Ault had a duty to not encourage her daughter to drive without a driver's license. State Auto contends that it "was foreseeable that Ault's encouragement of B.D.'s driving [by previously allowing her to drive Ault's vehicle without a license] would prompt B.D. to drive a vehicle in the future." Although there is a dispute of fact about this issue, for purposes of summary judgment we must assume that Ault had previously permitted B.D. to drive without a license. From this, State Auto contends that Ault had a duty to Close "because it was foreseeable that Ault's encouragement of B.D.'s driving would prompt B.D. to drive a vehicle in the future without sufficient skills and licensing."

[¶ 28.] However, this Court has previously indicated that the "lack of a driver's license is not evidence of negligence in the operation of a motor vehicle." *Amdahl v. Sarges*, 405 N.W.2d 638, 639 (S.D.1987). In *Amdahl*, we agreed with the Indiana Supreme Court in *Opple v. Ray*, 208 Ind. 450, 195 N.E. 81, 83 (1935), that the "mere fact of minority or lack of a [driver's] license" cannot be the sole facts upon which negligence is predicated. 405 N.W.2d at 639–40. That conclusion is especially applicable here, where State Auto has not identified any fact suggesting inadequate driving skills and B.D. was old enough to legally drive.[7] Although State

7. *See* SDCL 32–12–12, which provides:

A restricted minor's permit may be issued, upon application and payment of the proper fees as provided in § 32–12–16, to a minor at least fourteen years of age but less than eighteen years of age who has successfully passed all applicable tests and completed the requirements of an instruction permit as provided in § 32–12–11 or 32–12–11.1 and has not been convicted of a traffic violation during the past six months. For any such minor who has successfully completed a driver education course that

has been approved by the Department of Education or a driver education course that the secretary of the department of public safety has determined has been approved by a state government agency in another state, the required minimum time period for holding the instruction permit in order to qualify for the restricted minor's permit is ninety continuous days. A restricted minor's permit entitles the holder, while having the permit in immediate physical possession, to operate a motor vehicle during the hours of 6 a.m. to 10 p.m. standard time if the motor

Auto has identified one "serious incident with alcohol" and B.D.'s prior operation of a motor vehicle with her mother, State Auto has not tied those facts to inadequate driving skills. While we do not condone permitting an unlicensed person to drive, we cannot say that such conduct imposed a duty on Ault in this case. These facts are insufficient to establish a duty between Ault and Close with respect to B.D.'s alleged previous driving.

### Duty to Better Supervise a Child

 [¶ 29.] State Auto finally contends that Ault had a duty to better supervise her daughter that day. While third parties generally have no duty to control the actions of others, parents do have a limited duty to control the actions of their children. *See* Restatement (Second) of Torts § 315–16 (1965).

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
> (a) knows or has reason to know that he has the ability to control his child, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 316. Under this rule, a parent only has the duty "to exercise such ability to control his child as he in fact has at the time when he has the opportunity to exercise it and knows the necessity of so doing." *Id.* cmt. b.

 [¶ 30.] State Auto contends that "Ault had reason to know that she had the ability, necessity, and opportunity to control B.D." [8] However, the record reflects that on the morning of the accident, Ault dropped B.D. off at a friend's house where B.D. was scheduled to spend the day and night. The record further reflects that Ault did not know that B.D. would be at Close's home that day. Finally, the record reflects that while B.D. had previously gone swimming at Close's home, it was "[n]ot that often" and B.D. had never gone to Close's home with just a friend. These facts are uncontested and do not generally reflect the necessity and opportunity to better control B.D. on that day.

[¶ 31.] State Auto, however, contends that the fact that Ault did not know B.D. would go to Close's home on the day of the accident was evidence of her failure to exercise reasonable control. We disagree. There is no dispute that arrangements were made for B.D. to be at her friend's home. Moreover, State Auto has not identified any other fact or inference indicating that Ault had reason to know or should have known of the necessity and opportunity to intercede and exercise further control over B.D. after those arrangements were made. On the contrary, we see no record evidence of a history of B.D. entering people's homes or taking vehicles. Additionally, State Auto has not identified any additional measures that Ault should

---

vehicle is being operated with the permission of the holder's parent or guardian and during the hours of 10 p.m. to 6 a.m. if the motor vehicle is being operated under the direction of the holder's parent or guardian who is occupying a seat beside the holder. The restrictions as to time of operation and operation under the direction of a parent or guardian do not apply to the holder of a valid restricted minor's permit operating a self-propelled agricultural machine which is

not subject to registration under chapter 32–5.

8. State Auto cites *Johnson v. Glidden*, 11 S.D. 237, 76 N.W. 933 (1898), for the proposition that *if a parent knows* their child is using a firearm in a careless or negligent manner, the parent has a duty to impose his parental authority to protect others. However, State Auto's statement of material facts does not identify any fact suggesting the level of knowledge present in *Glidden*.

have taken to "better" control B.D. Therefore, we see nothing in the record suggesting that "B.D.'s past conduct should give any parent a reason to better monitor, supervise, and control" the activities of their children any more than Ault already had. Because the parties' statements of fact reflect that Ault was aware of where her daughter was supposed to be on the day of the accident, and because the statements do not reflect that Ault's expected custodial arrangement was inadequate, State Auto has failed to establish a duty to further control or better supervise B.D.

[¶ 32.] We therefore affirm on all issues, except the direct negligence action alleging a breach of duty in a gratuitous undertaking. That issue is remanded for reconsideration by the court after development of the factual record.

[¶ 33.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.